

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1313-13

**LIONEL GONZALES, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE FOURTH COURT OF APPEALS
## BEXAR COUNTY

HERVEY, J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, JOHNSON, KEASLER, COCHRAN, and ALCALA, JJ, joined. KELLER, P.J., filed a dissenting opinion.

### O P I N I O N

We granted the State's petition to review the opinion of the court of appeals on remand finding that Appellant's right to a speedy trial was violated. The court of appeals held that Appellant's right to a speedy trial was violated because the factors laid out by the United States Supreme Court to assess speedy-trial claims favored Appellant. It also held that the State failed to persuasively rebut the presumption of prejudice or prove that

Appellant acquiesced to the "extraordinary" delay in this case. *See Gonzales v. State*, No. 04–11–00405–CR, 2013 WL 4500656, at *7 (Tex. App.—San Antonio Aug. 21, 2013) (mem. op.) (not designated for publication). We will affirm the judgment of the court of appeals.

## PROCEDURAL HISTORY

Appellant, Lionel Gonzales, was indicted on March 17, 2004 for injury to a child and indecency with a child. An arrest warrant was issued following the indictment. The alleged incident from which the charges stemmed was alleged to have occurred on November 27, 2002. Appellant was not arrested on those charges until April 21, 2010—approximately six years after he was indicted and the arrest warrant was issued. After his arrest, Appellant filed a pretrial motion to dismiss the indictment for lack of a speedy trial, which the trial court denied. Appellant then pled no contest to the injury-to-a-child offense[1] and was placed on deferred-adjudication community supervision for five years and fined $1,500.

Appellant timely appealed the trial court's denial of his speedy-trial motion, but the court of appeals affirmed the judgment of the trial court. *See Gonzales v. State*, No. 04–11–00405–CR, 2012 WL 1364981 (Tex. App.—San Antonio Apr. 18, 2012) (mem. op.) (not designated for publication). Appellant then filed a petition for discretionary review. After granting Appellant's petition, we reversed the judgment of the court of

---

[1]The record shows that Appellant's plea-bargain agreement applied only to the injury-to-a child count and that the State ultimately did not pursue the indecency-with-a-child count.

appeals and remanded the case for the court to reanalyze Appellant's speedy-trial claim under the correct prejudice standard. *See Gonzales v. State*, No. PD-0724-12, 2013 WL 765575, at *1 (Tex. Crim. App. Feb. 27, 2013) (not designated for publication).

On remand, the court of appeals held that all four of the factors identified by the United States Supreme Court to be weighed in a speedy-trial analysis favored Appellant. *See Gonzales*, 2013 WL 4500656, at *7. Also, in reference to our opinion on remand, the court of appeals held that the State failed to persuasively rebut the presumption of prejudice or prove that Appellant acquiesced to the delay. *Id.* Therefore, the court of appeals reversed the trial court's denial of Appellant's speedy-trial motion and ordered that the indictment be dismissed with prejudice. *Id.* The State filed a petition for discretionary review with this Court asking us to review the judgment of the court of appeals in favor of Appellant, which was granted on four grounds.[2]

---

[2]The precise grounds upon which we granted the State's petition for discretionary review are,

(1) The court of appeals did not give appropriate deference to the trial court on matters of historical fact;

(2) The court of appeals failed to review the trial record for evidence of extenuation. Specifically, the court of appeals failed to consider the trial court's express and implied findings that Appellant was avoiding law enforcement—a finding supported by evidence that Appellant stopped reporting for his DWI probation and allowed his driver's license to expire;

(3) The court of appeals erred in its conclusion that the State failed to rebut the presumption of prejudice; and

(4) The court of appeals did not properly weigh and balance the *Barker* factors in light of the trial court's findings of fact. Specifically, the court of appeals failed to

## THE SPEEDY-TRIAL HEARING

A month after Appellant was arrested, he filed a motion to dismiss the indictment claiming that the State violated his constitutional right to a speedy trial. The trial court held a hearing on Appellant's motion to dismiss at which two witnesses testified—Appellant and his mother.

Appellant testified that he did not know about the indictment until he was arrested, that he had been living at the same address with his parents during the entire time period between the date of the alleged incident and Appellant's eventual arrest six years later, and that he could not "really remember much" about the alleged incident. He did, however, state that he remembered his parents meeting with some detectives, but he thought that "the cops would come and talk to me if they had any issues with me. I didn't think they would go and talk to my parents before they would talk to me first if I allegedly did something." On recross-examination, the State elicited testimony from Appellant that he had been charged with driving while intoxicated ("DWI") and that he had not renewed his driver's license after it expired in 2007 because he no longer had a car. Later, the State recalled Appellant to the stand and asked Appellant if he had an outstanding motion to revoke his community supervision in connection with his DWI from 2003. Appellant stated that he was made aware he had an outstanding motion to revoke while he was being booked for his 2006 arrest. He claimed that he "didn't remember that [he] had an

balance the State's negligence in executing Appellant's arrest warrant with Appellant's own conduct in avoiding law enforcement.

MTR . . . [,]" but he also stated, "they never came to see [him] for [the motion to revoke community supervision] either and [he] lived at the same place. They never came. I figured they'd come and get me if they wanted to."

Appellant's mother testified that her son has always lived with her and that she did recall someone speaking to her about the alleged incident with M.C. However, she could not remember when the officer came to see her. She further testified that she eventually went to the police station with her husband to speak to the officer, but that the officer only asked them a couple of questions, which she could not answer. When asked if the officer told her that charges would be filed against her son, she stated that the officer told her that "he was gathering information to see if, in fact, he had a case," but Appellant's parents never heard anything else from the officer or about the alleged incident. Appellant also elicited testimony that his father is not in good health after he had a third heart attack sometime after meeting with the officer, and that, as a result of his third heart attack, he now suffers from memory loss and doctors had to implant a defibrillator into his chest. As for the alleged incident involving M.C., Appellant's mother testified that she only "vaguely" remembered the alleged incident, and that she did not learn about the charges against her son until he was arrested.

On cross-examination, the State showed Appellant's mother a notarized statement signed in August 2003 and asked her to look at a specific portion of the statement. Then the following exchange occurred,

[WITNESS:] No. He asked me that. He told me, did you see the girl that had blood. He rewrote that statement two times before he got it right. And even then he didn't write it right.

[STATE:] But you signed this?

[WITNESS:] I felt that he was tricking me.

She did, however, admit that she signed the notarized statement and agreed that reading the report helped her to recall "some of the events that occurred that night" and that there were some facts that she could testify to if Appellant went to trial. On redirect, however, she testified that, other than what was in the statement the State provided to her, she had no independent recollection of the events that night. She also gave unobjected-to testimony that her husband told her that he did not remember the alleged incident either. On recross-examination by the State, Appellant's mother was asked if she was correct in her statement on redirect that she did not see anything the night of the alleged incident that would substantiate the charge, and the following exchange took place:

[WITNESS:] No.

[STATE:] But you just said you saw blood coming from the girl's --

[WITNESS:] I didn't say that. He told me, did you see blood.

[STATE:] And you said?

[WITNESS:] I said no, she had her sweater like this.
         (Witness indicating with the arm bent at the elbow covering the witness's face)

[STATE:] So you are saying that the officer lied?

[WITNESS:] Well --

[STATE:] And made you sign this statement that was false?

[WITNESS:] No.

[STATE:] So you did see some blood and you did believe the girl was bleeding?

[WITNESS:] I don't remember.

\*      \*      \*

[STATE:] You don't remember now?

[WITNESS:] No.

The State did not present any witnesses[3] or evidence at the hearing and conceded to the trial court that it could not explain why it took six years to execute the arrest warrant for Appellant. Nonetheless, the State argued in closing that, Appellant, who had an outstanding warrant for a DWI community-supervision violation, did not renew his driver's license after it expired in 2007 because "a warrant would have popped up and he would have been arrested for [the alleged incident with M.C.] at that time as well." The State also asserted that "it's pretty convenient for everybody to come forward now that [Appellant] has been arrested for this case and say, well, we forgot everything." Finally, the State implied that Appellant should have known that he could have been charged and

---

[3]The State argues in a footnote that it intended to call Appellant's father to the stand, and it cites a portion of the speedy-trial-hearing transcript to support that assertion. However, that portion of the record reflects that the State claimed to have subpoenaed both parents on May 5, 2010, but never explained why the father was not called as a witness if he was available.

that it "seems preposterous" that Appellant's parents "wouldn't take the time out of their day in the past six or seven years just to tell [Appellant], hey, some police officers talked to us about that girl that was in our house[.]"

In Appellant's closing arguments, he reiterated that he asserted his right to a speedy trial at his earliest opportunity and that "[i]t's really not [Appellant's] duty to call, to find out, you know, if there's a warrant on him or not." He also pointed out that he has resided at the same address with his parents his entire life. The State also briefly responded to Appellant's closing argument that the filed indictment correctly listed Appellant's address, and "[i]t would stand to reason that the indictment was mailed to that address at some point after the indictment. It also would stand to reason that [Appellant] knew that he was on [community supervision] on a DWI and had a[] [motion to revoke community supervision] for [the DWI] at some point and just basically failed to show for either one of them."

After an unspecified length of time, the trial court went back on the record and asked the State and Appellant some clarifying questions. First, the judge wanted to know whether the State had an explanation for the delay; the State answered that it did not. Second, the judge asked Appellant what prejudice he was specifically alleging, and Appellant responded that the length of delay had placed him in a position in which the only two witnesses that could possibly testify for him could not independently remember the alleged incident. The court then asked Appellant if he knew about an outstanding

warrant stemming from the motion to revoke his probation predating the indictment at issue. Appellant eventually responded that he was aware that his community supervision had been "withdrawn and terminated unsatisfactorily . . . ." The State also told the court that it could have a witness that was present when the arrest warrant was executed to testify that Appellant was also charged with evading arrest when he was arrested. Appellant conceded that he was being charged with evading arrest, but he argued that the evading charge was irrelevant to his speedy-trial issue. The court responded that "the State's argument [is] that the defendant is not being truthful when he states that he was unaware of potential charges and that he didn't make himself somehow or another available for the opportunity for an arrest[.] Isn't that the argument?" Appellant responded yes, however, the burden is on the State "to bring this case to trial, so if [the State] waited six years to up and get him . . . that still . . . goes back six years. [I]t's still a cap of six years."

Ultimately, the trial court denied Appellant's motion to dismiss and subsequently issued findings of fact and conclusions of law explaining why it did so.

## DISCUSSION

The Sixth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, guarantees a speedy trial to an accused. *See* U.S. CONST. amend VI; *see Kloper v. North Carolina*, 386 U.S. 213 (1967) (identifying the right to a speedy trial as fundamental and holding that it is applicable to the states

through the Due Process Clause of the Fourteenth Amendment). The plain language of the Sixth Amendment limits the applicability of the Speedy Trial Clause only to an accused. *United States v. Marion*, 404 U.S. 307, 313 (1971). Thus, a person who has not yet been formally charged cannot seek protection from the Speedy Trial Clause, and the State is not required "to discover, investigate, and accuse a person within any particular period of time." *Id.* at 313, 320. Rather, "[a]ny delay between commission of the crime and indictment is controlled by the applicable statute of limitations." *Kroll v. United States*, 433 F.2d 1282, 1286 (5th Cir. 1970).[4]

In addressing a speedy-trial claim, the Supreme Court has laid out four factors that a court should consider: (1) the length of delay, (2) the State's reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant because of the length of delay. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972). However, before a court engages in an analysis of each *Barker* factor, the accused must first make a threshold showing that "the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *See Doggett*, 505 U.S. at 651–52. This Court has reiterated that "presumptive prejudice" "simply marks the point at which courts deem the delay unreasonable enough to trigger [further] enquiry." *State v. Munoz*, 991 S.W.2d 818, 821–22 (Tex. Crim. App. 1999) (quoting *Doggett v.*

---

[4]*But see United States v. Crouch*, 84 F.3d 1497 (5th Cir. 1996) (stating that preindictment delay can violate a person's right to due process of law if the State intentionally delayed indictment to cause the person substantial and actual prejudice to gain a tactical advantage).

*United States*, 505 U.S. 647, 652 n.1 (1992)); *see Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992) (assuming that a 13-month delay was prima facie unreasonable under the circumstances). Thus, if the State prosecuted the accused with "customary promptness," the accused has failed to meet the threshold burden, but if the defendant can make a threshold showing of presumptive prejudice, a court must then proceed to consider each of the remaining *Barker* factors and weigh them. *Munoz*, 991 S.W.2d 818 at 821–22.

When reviewing an application of the *Barker* test, a reviewing court uses the same burden of proof allocation as in the context of a motion to suppress. *See Kelly v. State*, 163 S.W.3d 722, 726 (Tex. Crim. App. 2005). That is, we give almost total deference to historical findings of fact of the trial court that the record supports and draw reasonable inferences from those facts necessary to support the trial court's findings, but we review de novo whether there was sufficient presumptive prejudice to proceed to a *Barker* analysis and the weighing of the *Barker* factors, which are legal questions. *Id.*; *see Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Johnson v. State*, 954 S.W.2d 770, 771 (Tex. Crim. App. 1997). In addition, a reviewing court should not consider in its deliberations record evidence that was not before the trial court when it made its ruling. *See Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003); *see also Pierson v. State*, 426 S.W.3d 763, 771 (Tex. Crim. App. 2014).

**ANALYSIS**

**A. Presumptive prejudice and length of delay**

To consider the length of delay, we must first calculate the delay. The length of the delay is measured from the time the accused is arrested or formally accused. *See United States v. Marion*, 404 U.S. 307, 313 (1971). When the length of delay stretches well beyond the bare minimum needed to trigger a full *Barker* analysis, the length of a delay weighs against the State,[5] and the longer the delay, the more the defendant's prejudice is compounded. This is because "the presumption that pretrial delay has prejudiced the accused intensifies over time." *Zamorano v. State*, 84 S.W.3d 643, 649 (Tex. Crim. App. 2002) (quoting *Doggett*, 505 U.S. at 652).

In this case, the trial court found that there was a six-year delay between Appellant's formal accusation by indictment and his arrest. Thus, the trial court concluded that there was presumptive prejudice, a full *Barker* analysis should be undertaken, and the length of delay weighed in favor of Appellant. The court of appeals agreed with the trial court that Appellant had established presumptive prejudice and that the length of delay weighed in favor of Appellant. And it noted that the State did not contest that the length of time from Appellant's indictment to his arrest was sufficient to trigger a full *Barker* analysis. *See Gonzales*, 2013 WL 4500656, at *4. After deferring to the findings of fact by the trial court that the State delayed six years, which is supported by the record, we conclude that the delay was more than adequate to find presumptive

---

[5]*Zamorano v. State*, 84 S.W.3d 643, 649 (Tex. Crim. App. 2002).

prejudice and trigger a full *Barker* analysis. *See Harris*, 827 S.W.2d at 956. We also note that the length of delay extended far beyond the minimum amount of time required to trigger a full *Barker* analysis, and as a result, "this factor—in and of itself—weighs heavily against the State." *Zamorano*, 84 S.W.3d at 649.

## B. The reason for the State's delay

This factor looks to "the reason the [State] assigns to justify the delay." *See Barker*, 407 U.S. at 531. When assessing the reasons for delay, we assign different weights to different reasons. *See Zamorano*, 84 S.W.3d at 649. For example,

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Id.* (footnote omitted). As indicated, the length of delay can be further subdivided into justifiable and unjustifiable reasons for delay depending on the circumstances of the case. *See Barker*, 407 U.S. at 531–32. Unjustifiable reasons for delay count towards the "length of delay," while justifiable reasons for delay do not. *Id.* A justifiable reason for delay in a complex white-collar case, for example, may not be a justifiable reason for delay in a simple assault case. *See, e.g.*, *Dickey v. Florida*, 398 U.S. 30, 38 (1970) ("Crowded dockets, the lack of judges or lawyers, and other factors no doubt make some delays inevitable."); *United States v. Loud Hawk*, 474 U.S. 302, 316 (delay caused by

interlocutory appeal "ordinarily is a valid reason that justifies delay"); *Zamorano*, 84 S.W.3d at 650 (stating in reference to the State's reasons for delay that "[t]his was not a complex case; it was a simple DWI, and yet the State had no explanation for why it could not try the case for four years").

The trial court addressed the second *Barker* criterion in a single sentence: "[A] six[-]year delay and lack of explanation by the State warrant the examination of the third and fourth factors." Presumably, the reference to a six-year delay refers to the first factor—length of delay—and the lack of explanation on the part of the State goes to the second factor—the State's reason for the delay. When the court of appeals addressed this factor on remand, it agreed with the trial court and concluded that this factor weighed heavily in favor of Appellant. *Gonzales*, 2013 WL 4500656, at *4. The court of appeals reached this conclusion for the same reason the trial court did, but it also noted that this factor weighed against the State because Appellant's home address was known at all times by the State. *Id.*

The State argues that the court of appeals ignored express and implicit findings of the trial court when it concluded that there was "nothing in the record to indicate the delay between indictment and arrest was anything but negligence on the State's part," and that the court did not take into account Appellant's actions. However, the State misconstrues the analysis of the court of appeals, and the Supreme Court's holdings in *Barker* and its progeny, because it conflates the State's reasons for delay with whether

Appellant timely asserted his right to a speedy trial.

There can be no doubt that the State's unexplained six-year delay constitutes negligence that has compounded Appellant's presumptive prejudice over time. *See Doggett*, 505 U.S. at 652, 656 (reviewing the State's justification for delay to determine whether it exercised diligence and holding that negligence does not meet that standard). This carries even more weight because the State concedes that it knew Appellant's address the entire time but completely failed to attempt to contact him. *Id.* at 653 (the State's failure to find a defendant "within minutes" when able constitutes negligence). We also agree with the court of appeals (and thereby the trial court) that this factor weighs heavily in Appellant's favor.

### C. The timing of Appellant's assertion of his right to a speedy trial

"Whether and how a defendant asserts his right is closely related to the other [*Barker*] factors . . . ." *Barker*, 407 U.S. at 531 (noting that a defendant's timely assertion of his speedy-trial right affects the other *Barker* factors). As a result, this factor "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right [to a speedy trial]." *Barker*, 407 U.S. at 531–32. In addition, we have held that, although an accused is entitled to a speedy trial, a defendant has no duty to bring himself to trial. *See Zamorano*, 84 S.W.3d at 651. However, neither does the State have an obligation "to discover, investigate, and accuse a person within any particular period of time" because "[a]ny delay between commission of the crime and indictment is

controlled by the applicable statute of limitations." *Marion*, 404 U.S. at 313, 320.

The trial court found that Appellant filed his speedy-trial motion about a month after he was arrested. The trial court also found that

> [A]t no time during the six[-]year delay did defendant assert his right to a speedy trial. This coupled with the fact that [Appellant] let his driver's license expire and attempt to evade arrest leads the court to conclude that the defendant had some notion of outstanding charges and used the State's tardiness to his own advantage. This court is also unconvinced that defendant and his parents did not discuss the event that transpired in their own home or the conversations with police. Furthermore, defendant's testimony that he thought "the cops would come and talk to [him] if they had any issues" indicates that the defendant was at least aware officers were investigating the circumstances surrounding the event and was likely aware officers had been in touch with his parents.

Based on these findings, the trial court concluded that Appellant failed to timely assert his right to a speedy trial. The court of appeals reached the contrary conclusion that Appellant's first opportunity to assert his right to speedy trial was immediately after his arrest. *Gonzales*, 2013 WL 4500656, at *5. The court reasoned that Appellant had no notice of the pending indictment and that Appellant had "no duty to bring himself to trial; that is the State's duty,"[6] although the court did not explain how it reached the conclusion that Appellant had no notice of the indictment.

The trial court's findings are simply not sufficiently supported by the record. First, the finding that Appellant knew about the outstanding charges cannot be supported only

---

[6]*Zamorano*, 84 S.W.3d at 651.

by information regarding Appellant being booked for evading arrest, which was presented in closing arguments by the State without personal knowledge. We have held that statements of an attorney on the record may be considered as evidence only if the attorney "is speaking from first-hand knowledge." *See State v. Guerrero*, 400 S.W.3d 576, 585 (Tex. Crim. App. 2013). However, in this case, the prosecutor specifically stated during closing arguments that he would need a witness to testify to the evading issue, and based on the following excerpt, it is clear that the prosecutor had no personal knowledge of the evading issue:

> Your Honor, there is another issue that I didn't bring up today and I can just kind of tell you what it's about, but I potentially could have witnesses come in here and testify about the actual arrest on the warrant that occurred in April. There is another case that resulted out of that, an evading case, so I think there were officers that actually went to go find him on that day and actually did find him and he evaded those officers. That is something that I'm just telling you about, but I mean, if you wanted to -- me to bring up witnesses to testify to those facts, I could potentially get those officers in here.

Thus, the trial court erred when it relied on the State's representations that Appellant evaded arrest in April 2010 when he was arrested to support that finding.

Second, the trial court's finding that Appellant allowed his driver's license to expire in 2007 because he knew about the outstanding charges in this case is simply not a reasonable inference based on that fact alone. Third, the finding of the trial court that Appellant failed to assert his right to a speedy trial during the six-year delay is circular logic because it presumes the answer to the inquiry—Appellant cannot assert his right to a

speedy trial if he did not know about the charges.

Moreover, even when the evidence that Appellant "was at least aware officers were investigating the circumstances surrounding the event," is viewed in the light most favorable to the trial court's ruling and, even if we defer to the trial court on that finding, it is also insufficient to prove knowledge on the part of Appellant of the outstanding charges in this case. Knowledge that police are merely investigating a possible crime is insufficient to put a defendant on notice to assert his right to speedy trial. *See Doggett*, 505 U.S. at 653 (stating that the petitioner's timely assertion of his right to a speedy trial turns, in large part, on whether the petitioner knew about the outstanding charges); *see also United States v. Cardona*, 302 F.3d 494, 498 (5th Cir. 2002) (concluding that when there is no evidence that the appellant knew about the charges until his arrest, but he timely asserted his right to a speedy trial after his arrest, the assertion-of-the-right factor weighs in the appellant's favor). We conclude that Appellant timely asserted his right to a speedy trial. *See Doggett*, 505 U.S. at 653–54.

### D. Prejudice to Appellant because of the length of delay

To analyze prejudice, the Supreme Court in *Barker* identified three interests the Speedy Trial Clause was designed to protect, including "to prevent oppressive pretrial incarceration," "to minimize anxiety and concern of the accused," and "to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532; *see Zamorano*, 84 S.W.3d at 652. The last interest is the most important because the fairness of the entire

criminal-justice system is distorted when a defendant is unable to adequately prepare his defense. *Barker*, 407 U.S. at 532. Here, because Appellant spent no time in jail before his arrest, and if Appellant did not know about the indictment, he could have suffered little anxiety or concern. However, this is not the end of the inquiry.

In *Doggett v. United States*, 505 U.S. 647 (1992), the Supreme Court examined in more depth the role that excessive delay and presumptive prejudice play in the impairment of a defendant's ability to present a defense. *See id.* at 655–65. In certain instances, the length of delay may be so excessive that it "presumptively compromises the reliability of a trial in ways that neither party can prove or identify." *Shaw v. State*, 117 S.W.3d 883, 890 (Tex. Crim. App. 2003) (citing *Doggett*, 505 U.S. at 655). In such instances, the defendant is absolved from the requirement to demonstrate prejudice.[7] Although we have previously remanded this case and presumed the type of extraordinary prejudice that relieves Appellant of his burden to prove that the delay prejudiced him by impairing his ability to present a defense,[8] we have not examined this presumption at

---

[7]*Doggett*, 505 U.S. at 655–56; *see also United States v. Molina–Solorio*, 577 F.3d 300, 307 (5th Cir. 2009); *Gonzales*, 2013 WL 765575, at *1 (remanding for the court of appeals to review the record for rebuttal or extenuation of prejudice because "the six-year delay between indictment and arrest presumptively compromised the reliability of a trial in way that cannot be proven or identified").

[8]*See Gonzales*, 2013 WL 765575, at *1 ("In the instant case, the six-year delay between the appellant's indictment and his arrest 'presumptively compromise[d] the reliability of a trial in ways that neither party can prove or, for that matter, identify.'").

length.[9] We look first to guidance from the Supreme Court and then the Fifth Circuit Court of Appeals.[10]

In *Doggett*, the petitioner was indicted for conspiring to import and distribute cocaine. *Doggett*, 505 U.S. at 648. He was arrested 8 ½ years after his indictment. *Id.* at 650. The Supreme Court agreed with earlier courts that the delay was solely attributable to the State's negligence. *Id.* at 653. When the Court examined the prejudice component of the *Barker* test, it noted that "affirmative proof of particularized prejudice is not essential to every speedy trial claim," and that "negligence is not automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him." *Id.* at 656–57. And while conceding that "time can tilt the case against either side," the Court concluded that "one cannot generally be sure which [party] it has prejudiced more severely." *Id.* at 655. The Court also acknowledged that Doggett "did indeed come up

---

[9]We note that other opinions from the Fifth Circuit and other jurisdictions have addressed the issue of when prejudice should be considered "extraordinary" and presumed, although such opinions are only persuasive authority. *See, e.g.*, *United States v. Bergfeld*, 280 F.3d 486, 491 (5th Cir. 2002) (five-year delay caused by the Government's negligence entitled the appellant to a presumption of prejudice); *United States v. Brown*, 169 F.3d 344, 350 (6th Cir. 1999) (finding presumed prejudice after a five-and-one-half-year delay); *United States v. Shell*, 974 F.2d 1035, 1036 (9th Cir. 1992) (finding presumed prejudice after a six-year delay).

[10]This Court has relied on opinions from the Fifth Circuit Court of Appeals in the past with respect to speedy-trial issues despite the fact that such opinions are not binding on this Court. *See, e.g.*, *Cantu v. State*, 253 S.W.3d 273, 284 (Tex. Crim. App. 2008) (citing *United States v. Palmer*, 537 F.2d 1287 (5th Cir. 1976)); *Zamorano*, 84 S.W.3d at 652 n.42 (citing *United States v. Gonzales*, 897 F.2d 1312 (5th Cir. 1990); *Spence v. State*, 758 S.W.2d 597, 598 n.1 (Tex. Crim. App. 1988) (citing *United States v. Giwa*, 831 F.2d 538, 542 (5th Cir. 1987); *United States v. Johnson*, 815 F.2d 309 (5th Cir. 1987)); *Meshell v. State*, 739 S.W.2d 246, 256 (Tex. Crim. App. 1987) (citing *United States v. Carter*, 603 F.2d 1204 (5th Cir. 1979)).

short" with respect to proving affirmative prejudice, although it still held in his favor and granted relief. *Id.* at 658. Regarding the State's attempt to persuasively rebut the "extraordinary" presumptive prejudice, the Supreme Court agreed that, while the State "ably counter[ed] Doggett's efforts to demonstrate particularized prejudice, it has not, and probably could not have, affirmatively proved that the delay left his ability to defend himself unimpaired."[11] *Id.* at 658 n.4.

In *Cardona*, the appellant was indicted on April 23, 1995, and an arrest warrant issued the same day. *Cardona*, 302 F.3d at 498. Over five years later, on October 28, 2000, the appellant was arrested on the outstanding warrant. *Id.* The Fifth Circuit Court of Appeals reversed and remanded because it concluded that the district court erred in its speedy-trial analysis. *Id.* at 496. Specifically, the court held that the excessive delay was due to the negligence of the State and the court reasoned that, because the prejudice

---

[11]The State argues that the Supreme Court's footnote "is more dictum than precedent and more cryptic than helpful" and asserts that we have pronounced that footnotes should receive minimal precedential value. *See Young v. State*, 826 S.W.2d 141, 144 n.5 (Tex. Crim. App. 1991). We agree that we have intimated that we are not bound by holdings expressed in the footnotes of our own opinions. However, we make three observations.

First, we have never held that footnotes in Supreme Court opinions are not binding, and we have previously adopted a footnote from the United States Supreme Court's decision in *Doggett*. *See Munoz*, 991 S.W.2d at 821–22. Second, the Fifth Circuit Court of Appeals was sufficiently persuaded by the importance of the footnote in *Doggett* to adopt it as applicable law in this circuit. *See Molina–Solorio*, 577 F.3d at 307. And while we acknowledge that federal constitutional interpretations of the Fifth Circuit Court of Appeals are not binding on this Court, we find the analysis of the Fifth Circuit in the cases cited today persuasive. *See Cooper v. State*, 631 S.W.2d 508, 514 (Tex. Crim. App. 1982) (stating that the Court of Criminal Appeals is not bound by federal constitutional interpretations of the lower circuit courts). Finally, it is not clear how much precedential value a pronouncement delivered by this Court in a footnote should carry, considering that we have stated that footnotes "should receive minimal precedential value." *Young*, 826 S.W.2d at 144 n.5.

caused by excessive delay compounds over time, a five-year delay was sufficient to absolve the appellant of his burden to prove prejudice. *Id.* at 498. However, it did not discuss the rebuttal of the presumption other than to state that the presumption of prejudice was not extenuated nor rebutted. *Id.* at 499.

In *Molina–Solorio*, the Fifth Circuit presumed prejudice when nearly ten years passed between the appellant's indictment and trial, and eight of those years were spent in custody. *Molina–Solorio*, 577 F.3d at 304. The appellant argued that "the length of delay, combined with the [State's] negligence and his timely assertion of his rights, warrant[ed] a finding of presumed prejudice." The court agreed. *Id.* When examining the presumption of prejudice, the court rejected the Government's assertion that it had proven extenuation or rebutted the presumption. *Id.* at 307. It explained that, because the appellant timely asserted his right, he did not acquiesce to the delay. *Id.* With respect to whether the Government persuasively rebutted the presumed prejudice, the court concluded that, despite the Government's arguments in rebuttal to the appellant's attempts to demonstrate actual prejudice, the presumption had not been rebutted under *Doggett*. *Id.* at 307. In a footnote, the court stated that "to say that the Government has met its burden in this case would be to rob the *Doggett* presumption of any efficacy." *Id.* at 307 n.4. The Fifth Circuit also noted that the Supreme Court in *Barker* discussed that "prejudice should be presumed and the burden shifted to the state to prove the negative by affirmatively demonstrating that there was no prejudice to defendant as a result of the delay," and that

"[a]lthough the burden shift might require the state to prove facts inaccessible to it, e.g., that no evidence for the defense was lost or impaired, that is the point[.]" *Id.* (internal citation omitted). The Fifth Circuit went on to cite the Supreme Court's footnote in *Doggett* explaining that the Government probably could not have affirmatively proven that the excessive delay did not impair the appellant's ability to defend himself. *See id.* (citing *Doggett*, 505 U.S. at 654 n.4).

After sifting through the confusing web of federal discussion in this area, we now turn to the issue of presumed prejudice in this case, whether the court of appeals properly reviewed the record on remand for acquiescence by Appellant, and whether the State persuasively rebutted the presumed prejudice.

In its opinion on remand, the court of appeals explained its analysis of extenuation thusly, "We already concluded that [Appellant] did not acquiesce in the delay because, as discussed above, he asserted his rights once he was aware of the indictment against him." *Gonzalez*, 2013 WL 4500656, at *6 (citing *Molina–Solorio*, 577 F.3d at 307). With respect to whether the State persuasively rebutted the presumption of prejudice, and citing the Supreme Court's opinion in *Doggett*, the court of appeals stated that

> [w]hile we acknowledge that attempting to prove a negative is difficult, the State is nonetheless required to rebut or extenuate the presumption of prejudice. [Appellant] was not required to show he was unable to adequately prepare for his defense, but rather, the State was required to show that his defense was unimpaired despite the lengthy delay.

*Id.* at *7 (internal citation omitted). Based on this, and the arguments and evidence put

forth by the State, the court of appeals concluded that the State failed to meet its burden to persuasively rebut the presumption of prejudice. *Id.*

When a defendant has timely asserted his right to a speedy trial, it is a difficult task for the State to prove that the defendant acquiesced in the delay. And in this case, other than the findings of fact of the trial court already raised by the State and previously discussed, the State points to no record evidence to show that Appellant acquiesced in a six-year delay in being brought to trial for these charges. Therefore, after reviewing the State's arguments, the findings of the trial court, and the transcript of the speedy-trial hearing, we agree with the court of appeals and hold that the State has failed to vitiate the presumption of prejudice by proving that Appellant acquiesced to the delay. As to whether the State persuasively rebutted the presumption, although we recognize that this is a close decision and that this Court must engage "'in a difficult and sensitive balancing process' in each individual case,"[12] we again agree with the court of appeals that the State has failed to persuasively rebut the presumption of prejudice in this case. Although we do not take lightly the dismissal of an indictment, because of the State's negligence in failing to pursue Appellant with diligence for six years, we believe that the facts of this case fall within the parameters of *Doggett* and *Molina–Solorio*. Therefore, we conclude that Appellant's right to a speedy trial was violated. We affirm the judgment of the court of appeals.

---

[12]*See Cantu*, 253 S.W.3d at 281 (quoting *Barker*, 407 U.S. at 533).

**CONCLUSION**

After reviewing the findings of fact of the trial court, the speedy-trial analysis of the court of appeals, and applying the *Barker* factors de novo, we reach the same conclusion as the court of appeals that Appellant's right to a speedy trial was violated. Therefore, we affirm the judgment of the court of appeals, and the indictment against Appellant is dismissed with prejudice.

Hervey, J.

Delivered: June 25, 2014

Publish