**AFFIRMED; Opinion Filed April 1, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00283-CR

### SHARON DENISE JACKSON, Appellant
### V.
### THE STATE OF TEXAS, Appellee

### On Appeal from the Criminal District Court No. 5
### Dallas County, Texas
### Trial Court Cause No. F-1163186-L

## MEMORANDUM OPINION
Before Justices Lang, Stoddart, and Schenck
Opinion by Justice Stoddart

Sharon Denise Jackson appeals the trial court's denial of her motion to dismiss for violation of her right to a speedy trial. We affirm the trial court's judgment.

### FACTUAL BACKGROUND

Jackson was arrested for possession of cocaine on December 19, 2011. Seventeen months later, on May 6, 2013, the State filed Jackson's case with the grand jury; the grand jury returned an indictment on May 30, 2013, charging Jackson with possession of cocaine. On June 18, 2013, Jackson filed a "motion to set aside prosecution for State's violation of defendant's right to a speedy indictment and trial." The trial court held a hearing on November 1, 2013, and denied the motion. On January 10, 2014, Jackson executed a judicial confession and entered a negotiated plea of guilty.

Jackson testified at the hearing on her motion. Approximately one month before her arrest, she met a man, Jose Rodriguez, on a "chat line." On the night she was arrested, Rodriguez called and asked her for a ride home. Jackson gave him a ride and when they reached the location where he wanted to be dropped off, he "didn't even give my van time enough to stop where he told me to stop, before the doors opened. He was out, and he slammed the door." Jackson pulled away from the curb, and then the police car behind her put on its lights. She testified when the police stopped her she did not know there was cocaine in her van.

Jackson was released from jail three days after her arrest and called Rodriguez. Jackson testified: "I called him, to tell him never to call me again. . . . I said, 'What was in my truck?' . . . He said he left them in my purse; that he dropped them down beside. Because my purse was between the two seats. And he said, when he realized they were behind us, then he just reached his hand down and just dropped it in my purse."

After she was indicted, Jackson attempted to contact Rodriguez again but was unable to locate him. "Because when I talked to him that day that I got out of jail, he said that I didn't have to worry about anything because he was going back to Mexico. That's where his wife and his kids were. And that his Visa [sic] papers, whatever, green card, whatever, had run out and he had to go back to Mexico. I can't find him. I don't know where he's at."

When she was arrested, Jackson was working for In-N-Out Burger, but she claimed was fired "because of the case not being filed." She testified she was unable to sustain employment since the arrest. However, at the time of the hearing, she worked for the Wiley school district. She said she was able to obtain the job with the Wiley school district only "[a]fter you guys had filed my case."

–2–

She testified the State's delay harmed her ability to defend herself, but did not explain how. She also testified she does not sleep well, and her teenage daughter has experienced emotional distress resulting from her legal problems.

The State did not present any witnesses at the hearing. However, it offered three exhibits without objection, including a copy of the laboratory results. Although the laboratory results do not appear in our appellate record, the State said at the hearing they were issued on January 11, 2013.

LAW & ANALYSIS

The Sixth Amendment of the United States Constitution, made applicable to the States through the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" U.S. CONST. amend. VI; *see also Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014). Courts determine a speedy trial claim on an "ad hoc basis" by analyzing and weighing four factors: (1) the length of the delay, (2) the State's reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant because of the length of delay. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Gonzales*, 435 S.W.3d at 808. The State has the burden to justify the length of the delay, while the defendant has the burden to prove he asserted his right and is prejudiced. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008). The defendant's burden on the latter two factors "varies inversely" with the State's degree of culpability for the delay. *Id*. When conducting the balancing test, no single factor is determinative, and the conduct of both the prosecutor and the defendant must be weighed. *Barker*, 407 U.S. at 530, 533; *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999).

To trigger a speedy trial analysis, the defendant must make an initial showing that "the interval between accusation and trial has crossed the threshold dividing ordinary from

'presumptively prejudicial' delay." *Gonzales*, 435 S.W.3d at 808 (quoting *Doggett v. United States*, 505 U.S. 647, 651–52 (1992)). If the defendant makes a threshold showing of presumptive prejudice, the court must consider and weigh each of the remaining *Barker* factors. *Id.* (citing *Munoz*, 991 S.W.2d at 821–22).

If the right to a speedy trial has been violated, the remedy is dismissal of the charging instrument with prejudice. *Cantu*, 253 S.W.3d at 281. Because this is an extreme remedy, "courts must apply the *Barker* balancing test with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Id.* "The constitutional right is that of a speedy trial, not dismissal of the charges." *Id.*

When reviewing the trial court's ruling on a speedy trial claim, we apply a bifurcated standard of review. *See Gonzales*, 435 S.W.3d at 808. Because the State prevailed in the trial court, we presume the trial judge resolved any disputed fact issues in the State's favor, and we defer to the implied findings of fact that the record supports. *Cantu*, 253 S.W.3d at 282 (citing *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002)). We review legal questions de novo to determine whether there was sufficient presumptive prejudice to proceed to a *Barker* analysis and the weighing of the *Barker* factors. *Gonzales*, 435 S.W.3d at 809. We must uphold the trial court's ruling if it is supported by the record and is correct under the applicable law. *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003).

1.      **Length of Delay**

At the hearing on Jackson's motion, the State conceded the speedy trial issue was triggered because there was more than a one-year delay between the arrest and indictment. Likewise in its brief, it concedes "the delay from the time of Appellant's formal arrest to the time that she was brought to trial was presumptively prejudicial."

Because the State concedes the delay was presumptively prejudicial, the first factor weighs in favor of Jackson.

## 2.     Reason for Delay

With respect to the second *Barker* factor, the State bears the initial burden of justifying the delay. *Emery v. State*, 881 S.W.2d 702, 708 (Tex. Crim. App. 1994). Different reasons for delay are assigned different weights: an intentional delay for tactical reasons is weighed heavily against the State; a neutral reason, such as overcrowded courts or negligence, is weighed less heavily against the State; and a valid reason is not weighed against the State at all. *Munoz*, 991 S.W.2d at 822 (citing *Barker*, 407 U.S. at 528–30 and *Dickey v. Florida*, 398 U.S. 30, 48 (1970) (Brennan, J., concurring)).

The State argues the reason for the delay in indicting Jackson is that the State did not receive results from the laboratory until January 11, 2013, and the State's practice is to defer indictment until lab results are received. The State did not offer any evidence explaining why the lab report was issued more than one year after Jackson was arrested.[1] Although the record lacks evidence showing the reason the laboratory issued its report more than one year after Jackson was arrested, we must presume the trial court resolved any disputed fact issues in the State's favor and we defer to the implied findings that the record supports. *See Cantu*, 253 S.W.3d at 282. Even so, we cannot conclude the State's explanation—the delay in receiving laboratory test results—justifies the delay in seeking and obtaining an indictment against Jackson. The State's "unreasonable delay" in a run-of-the-mill criminal case cannot be justified merely by suggesting that the State has a backlog of cases or a shortage of staff. *Santibanez v.*

---

[1] At the hearing on Jackson's motion, the State told the trial court the lab report is dated January 11, 2013. The judge also stated the lab results are dated January 11, 2013. The reporter's record shows the lab results were admitted without objection; however, the lab results do not appear in our record. Because we defer to the implied findings of fact the record supports, we assume the State did not receive the laboratory reports until January 11, 2013. *See Cantu*, 253 S.W.3d at 282.

*State*, 717 S.W.2d 326, 330 (Tex. Crim. App. 1986) (citing *Barker*, 407 U.S. at 538 (White, J., concurring)).

However, there also is no evidence the State deliberately delayed for strategic gain. Therefore, we conclude the second *Barker* factor weighs slightly against the State.

### 3.     Assertion of the Right

Regarding the third *Barker* factor, the defendant bears the responsibility to assert his right to a speedy trial. *Cantu*, 253 S.W.3d at 282. Whether and how a defendant chooses to assert his right "is closely related to the other three factors because the strength of his efforts will be shaped by them." *Id*. at 282–83. A defendant's failure to timely seek a speedy trial does not amount to a waiver of the right. *Shaw*, 117 S.W.3d at 890 (citing *Barker*, 407 U.S. at 532). However, a defendant's failure to timely demand a speedy trial makes it difficult for the defendant to prevail on a speedy trial claim because the failure to timely demand a speedy trial indicates strongly that he did not really want a speedy trial and was not prejudiced by not having one. *Shaw*, 117 S.W.3d at 890; *see also Barker*, 407 U.S. at 536 ("[B]arring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates . . . that the defendant did not want a speedy trial."); *Harris v. State*, 827 S.W.2d 949, 957 (Tex. Crim. App. 1992) ("[A]ppellant's lack of a timely demand for a speedy trial indicates strongly that he did not really want a speedy trial."). The longer the delay becomes, the more heavily a defendant's inaction weighs against him. *Shaw*, 117 S.W.3d at 890.

Jackson argues she "could hardly have asserted her speedy trial rights more quickly than she did" because she filed her motion on June 18, 2013, before the first docket setting in the case. However, "invocation of the speedy trial provision . . . need not await indictment, information, or other formal charge." *Cantu*, 253 S.W.3d at 284 (quoting *Dillingham v. United*

–6–

*States*, 423 U.S. 64, 65 (1975)). Although a defendant cannot file a motion for speedy trial until formal charges are made, "his 'silence during the entire pre-indictment period works against him because it suggests that any hardships he suffered were either minimal or caused by other factors.'" *Id.* (quoting *United States v. Palmer*, 537 F.2d 1287, 1288 (5th Cir. 1976)).

An accused who has been arrested but not charged has a choice: (1) wait until he is charged, file a motion requesting a speedy trial, and, if the trial court does not grant this motion, then file a motion to dismiss "because he has diligently sought what he is entitled to—a speedy trial," or (2) wait until he is charged and file a motion to dismiss "if he can show that he diligently tried to move the case into court before formal charges were filed." *Cantu*, 253 S.W.3d at 284.

Jackson first moved to dismiss in June 2013, only about six weeks after she was indicted, but approximately eighteen months after she was arrested. The record does not show any efforts by Jackson to move the case into court during the time between her arrest and her motion. Jackson's "failure to diligently and vigorously seek a rapid resolution is entitled to 'strong evidentiary weight.'" *Id.* (quoting *Barker*, 407 U.S. at 531-32). These facts suggest Jackson did not really want a speedy trial; she only wanted a dismissal. *See id.* at 283. Jackson's delay in attempting to move her case into court weighs against her.

### 4. Prejudice

We finally turn to the fourth *Barker* factor, the prejudice to Jackson from the delay. "Because 'pretrial delay is often both inevitable and wholly justifiable,'" this factor "examines whether and to what extent the delay has prejudiced the defendant." *Cantu*, 253 S.W.3d at 285 (quoting *Doggett*, 505 U.S. at 656). The prejudice must be assessed in light of the interests that the speedy trial right is meant to protect: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense

will be impaired. *Id*.; *see also Barker*, 407 U.S. at 532. Of these three interests, the possibility the defense will be impaired by dimming memories and the loss of exculpatory evidence is the most serious "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532; *see also Doggett*, 505 U.S. at 654; *Gonzales*, 435 S.W.3d at 812.

The record does not include any evidence of actual prejudice. Except for the three days immediately following her arrest, Jackson was not incarcerated pending the indictment. She also did not testify the delay caused her any unusual anxiety or concern beyond the level normally associated with being arrested for possession of illegal drugs. Although Jackson testified she was harmed by the delay, she did not explain how.

Jackson primarily asserts prejudice on the ground that a critical witness is no longer available to the defense. However, she also maintains Rodriguez told her that he was returning to Mexico to be with his family and his immigration papers expired. Jackson's testimony does not establish that Rodriguez would have been available as a witness if the case had promptly gone to trial—her testimony establishes Rodriguez was returning to Mexico. Further, to conclude the delay prejudiced Jackson, we must assume Rodriguez would have testified that the drugs were his and he put them in her car. We will not indulge that assumption. We conclude Jackson did not present any evidence suggesting any delay in bringing her case to trial impaired her ability to defend herself or caused her actual prejudice.

Further, any presumptive prejudice created by the delay of more than one year is extenuated by Jackson's acquiescence to the delay, as shown by her failure to act and seek a rapid resolution after her arrest. *See Shaw*, 117 S.W.3d at 890 (quoting *Doggett*, 505 U.S. at 655).

The fourth factor weighs in favor of the State.

**5.  Balancing of Factors**

Finally we must balance the *Barker* factors with "common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed."  *Cantu*, 253 S.W.3d at 281.  "The constitutional right is that of a speedy trial, not dismissal of the charges." *Id*.

Although the length of the delay and reason for the delay slightly weigh in favor of finding a violation of her right to a speedy trial, the other two factors weigh in favor of concluding there was no violation.  There is no evidence the State intentionally delayed for strategic gain and there also is no evidence that Jackson diligently tried to move her case into court during the months between her arrest and the indictment issuing.

We conclude the trial court did not err by denying Jackson's motion.

CONCLUSION

We affirm the trial court's judgment.

/Craig Stoddart/
CRAIG STODDART
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
140283F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

SHARON DENISE JACKSON, Appellant

No. 05-14-00283-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 5, Dallas County, Texas
Trial Court Cause No. F-1163186-L.
Opinion delivered by Justice Stoddart.
Justices Lang and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 1st day of April, 2015.