

# Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00778-CR

The **STATE** of Texas,
Appellant

v.

Vivian **LAMPKIN**,
Appellee

From the County Court at Law No. 12, Bexar County, Texas
Trial Court No. 601339
Honorable Yolanda T. Huff, Judge Presiding

Opinion by:    Liza A. Rodriguez, Justice

Sitting:       Rebeca C. Martinez, Chief Justice
               Beth Watkins, Justice
               Liza A. Rodriguez, Justice

Delivered and Filed: June 23, 2021

REVERSED AND REMANDED

The State appeals from the trial court's order granting Vivian Lampkin's motion to dismiss for violation of her right to a speedy trial and dismissing the assault-bodily injury charge against her. On appeal, the State argues the trial court erred in determining Lampkin's right to a speedy trial was violated and dismissing her case. We reverse the trial court's order and remand the cause for further proceedings consistent with this opinion.

## BACKGROUND

On November 19, 2018, Vivian Lampkin and her daughter Rahida Slack were each charged with assault-bodily injury. The assault against complainant Sandra Denise Robinson was alleged to have occurred on November 21, 2016. Thus, Lampkin and Slack were charged two days before the statute of limitations would have run. Lampkin was arrested on November 30, 2018. That same day, she posted bond and was released.[1]

At the first trial setting on May 7, 2019, the State announced "not ready." The trial court reset the case for June 18, 2019. At the June setting, Lampkin announced "not ready," and the trial was reset for August 27, 2019. On August 27, 2019, Lampkin filed a motion for continuance, arguing that photographic evidence had not been disclosed to the defense. Additionally, Lampkin's attorney asserted in the motion for continuance that he would be on vacation from September 17, 2018 to October 12, 2018. Also on August 27, 2019, Lampkin filed a motion to dismiss, arguing that her right to a speedy trial had been violated because the State had "waited an unreasonably long period of time from the date of offense to charge and arrest" her, which resulted in her suffering "substantial prejudice." Lampkin requested that the trial court grant the motion and dismiss the charge against her. The trial court granted Lampkin's motion for continuance and reset the case for October 15, 2019.

At the October 15, 2019 setting, the trial court heard Lampkin's motion to dismiss for violation of her right to speedy trial. After hearing the evidence, the trial court granted the motion

---

[1] In the trial court, Lampkin's and Slack's cases were consolidated. The same defense counsel represented both Lampkin and Slack, and a motion for speedy trial was filed in each case. In its findings of fact, the trial court stated that "[f]or purposes of judicial economy, the court is considering the testimony from the hearing on October 15, 2019 in both cases."

and dismissed the case against Lampkin for violation of her right to a speedy trial.[2] The State appeals.

## DISCUSSION

The Sixth Amendment to the Constitution, made applicable to the States though the Fourteenth Amendment, guarantees an accused the right to a speedy trial. U.S. CONST. amend. VI, XIV. "A speedy trial protects three interests of an accused: freedom from oppressive pretrial incarceration; mitigation of the anxiety and concern accompanying public accusation; and avoidance of impairment to the accused's defense." *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008). "The right attaches once a person becomes an 'accused'—that is, once he is arrested or charged." *Id*. (citing *United States v. Marion*, 404 U.S. 307, 321 (1971)). Courts analyze federal constitutional speedy-trial claims "on an ad hoc basis" by weighing and then balancing the four factors enunciated in *Barker v. Wingo*, 407 U.S. 514, 532 (1972): (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant because of the length of delay. "While the State has the burden of justifying the length of delay, the defendant has the burden of proving the assertion of the right and showing prejudice." *Cantu*, 253 S.W.3d at 280. "If the defendant can make a threshold showing that the interval between accusation and trial is 'presumptively prejudicial,' then a court must consider each of the remaining *Barker* factors and weigh them." *Balderas v. State*, 517 S.W.3d 756, 767 (Tex. Crim. App. 2016).

"When reviewing the trial court's application of the *Barker* test, we give almost total deference to the trial court's historical findings of fact that the record supports, and we draw reasonable inferences from those facts necessary to support the trial court's findings." *Id*. at 767-

---

[2] The trial court heard both Lampkin's and Slack's motions to dismiss at the same time. It then granted both motions and dismissed both cases.

68. "A reviewing court should not consider in its deliberations record evidence that was not before the trial court when it made its ruling." *Id*. at 768. "Review of the individual *Barker* factors necessarily involves fact determinations and legal conclusions, but the balancing test as a whole is a purely legal question that we review de novo." *Id*.

### A. The Length of Delay

We measure the length of delay from (1) the time the accused is arrested or charged to (2) the time of trial or the defendant's demand for a speedy trial. *See Cantu*, 253 S.W.3d at 280; *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002). "In general, courts deem delay approaching one year to be 'unreasonable enough to trigger the *Barker* enquiry.'" *Balderas*, 517 S.W.3d at 768 (quoting *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003)). "The extent to which the delay exceeded the minimum needed to trigger judicial examination factors into [the court's] assessment of the first *Barker* factor." *Balderas*, 517 S.W.3d at 768. "For example, an interval of three and one-half years 'stretched far beyond the minimum needed to trigger the enquiry' and weighed heavily in favor of finding a violation of the speedy trial right." *Id*. (quoting *Dragoo*, 96 S.W.3d at 314).

Here, Lampkin was arrested on November 30, 2018, and was immediately able to post bond. Her motion to dismiss for violation of her right to a speedy trial was heard on October 15, 2019. *See Zamorano*, 84 S.W.3d at 649 (measuring length of delay from time of defendant's arrest to the date of the hearing on his speedy trial motion). Thus, the length of time was approximately eleven months. We conclude this length of delay is presumptively unreasonable and triggers a speedy trial analysis. *See id*. at 649 n.26 (explaining that courts generally hold "any delay of eight months or longer is presumptively unreasonable and triggers speedy trial analysis"). However, because the delay just exceeds the minimum needed to trigger the other *Barker* factors, this first

factor does not weigh heavily in favor of finding a violation of Lampkin's speedy trial right. *See Balderas*, 517 S.W.3d at 768.

### B. The Reason for the Delay

In assessing the second *Barker* factor, "we assign different weights to different reasons" *Balderas*, 517 S.W.3d at 768. "Some reasons are valid and serve to justify an appropriate delay." *Id*. "Deliberate delay intended to 'hamper the defense' weighs heavily against the State, while more neutral reasons, such as negligence or overcrowded courts, weigh less heavily." *Id*. "Additionally, we consider 'whether the government or the criminal defendant is more to blame for th[e] delay.'" *Id*. (quoting *Vermont v. Brillon*, 556 U.S. 81, 90 (2009)). "Delay caused by either the defendant or his counsel weighs against the defendant." *Id*. "In the absence of an assigned reason for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay." *Id*.

At Lampkin's first trial setting on May 7, 2019, the State announced, "not ready," which the prosecutor at the speedy trial hearing stated was "common practice for each side to get one not ready." At the second trial setting on June 18, 2019, the defense announced "not ready." At the speedy trial hearing, the trial court asked the defense why it had announced "not ready" at the June setting. Defense counsel responded that he did not recall the exact reason but he believed the defense "may have had a missing witness [who] wasn't able to be there." On the date of the third trial setting, August 27, 2019, the defense filed a motion for continuance and a motion to dismiss for violation of the right to speedy trial. The trial court asked the defense at the speedy trial hearing why it had moved for a continuance at the August setting. Defense counsel replied,

> there was an issue with the discovery in this case that had not been provided to [the defense] and that's why the court granted our motion for continuance on that, because we came in showing that this was necessary evidence that we needed to have. Specifically, it was the evidence from the murder case that arose contemporaneously with this incident.

The prosecutor responded that the defense had not brought up this discovery issue in the two prior trial settings. Further, the prosecutor stated at the hearing that the "discovery had been made available all the way back from November of 2018 when the case was filed. So there was no discovery that was being withheld . . . ." According to the prosecutor, the defense counsel had not followed up with "what the notice of additional discovery said that had been uploaded from November of 2018." The prosecutor stated that the discovery had not been uploaded late and had all been uploaded in November of 2018. In its findings of fact, the trial court stated the following with respect to the August 27, 2019 trial setting:

> On August 27, 2019, the case was set for trial. Ms. Slack [Lampkin's co-defendant] did not recall the reason the trial did not go forward on that date. In reviewing the [c]ourt's official file, the [c]ourt notes that a formal Motion for Continuance was filed indicating that the Defense believes that discovery is not complete, and cites specific items of evidence that it believes to be in existence that had not been tendered to the defense.

The trial court made no findings about whether the discovery had been timely provided by the State.

The record reflects that the first trial setting was reset because the State announced "not ready," which the prosecutor stated is common for first settings. Thus, the State's reason was a neutral one. *See Balderas*, 517 S.W.3d at 768. At the second trial setting, the defense announced "not ready." Defense counsel could not recall why the defense had not been ready but thought it could have been because of a missing witness. Delay caused by the defendant weighs against the defendant. *Id*. Thus, the delay in not going forward with this second setting weighs against Lampkin. With regard to the August setting, the defense moved for a continuance, alleging the existence of evidence the State failed to tender to the defense. The record before us contains no evidence that would support even an implied finding that the State withheld evidence for purposes

of trial delay. Thus, we cannot hold that this factor weighs heavily against the State and, at most, would weigh only slightly in Lampkin's favor.

### C. Lampkin's Assertion of Her Right to a Speedy Trial

"Whether and how a defendant asserts his right is closely related to the other [*Barker*] factors . . . ." *Barker*, 407 U.S. at 531. "The more serious the deprivation, the more likely a defendant is to complain." *Cantu*, 253 S.W.3d at 283 (quoting *Barker*, 407 U.S. at 531). "As a result, this factor 'is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right [to a speedy trial].'" *Gonzales v. State*, 435 S.W.3d 801, 810-11 (Tex. Crim. App. 2014) (quoting *Barker*, 407 U.S. at 531-32). "Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one." *Cantu*, 253 S.W.3d at 283. "Repeated requests for a speedy trial weigh heavily in favor of the defendant, while the failure to make such requests supports an inference that the defendant does not really want a trial, he wants only a dismissal." *Id*.

In her motion to dismiss for violation of her right to a speedy trial filed on August 27, 2019, Lampkin requested only that her case be dismissed. She did not request that her case be set immediately for trial. Instead, that same day, Lampkin filed a motion for continuance. Both Lampkin's motion to dismiss and her motion for continuance weigh against her and support an inference that she wanted only a dismissal. *See id.* This factor weighs heavily against Lampkin.

### D. Prejudice to Lampkin

"Because 'pretrial delay is often both inevitable and wholly justifiable,' the fourth *Barker* factor examines whether and to what extent the delay has prejudiced the defendant." *Cantu*, 253 S.W.3d at 285 (quoting *Doggett v. United States*, 505 U.S. 647, 656 (1992)). "To analyze prejudice, we consider three interests of defendants that the Speedy Trial Clause was designed to protect: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern

of the accused; and (3) limiting the possibility that the defense will be impaired." *Balderas*, 517 S.W.3d at 772. "The last interest is the most important because the fairness of the criminal-justice system is distorted when a defendant is unable to adequately prepare his defense." *Id*. "A defendant has the burden to make some showing of prejudice, but a showing of actual prejudice is not required." *Id*. "Excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or identify." *Id*.

With regard to the first interest the Speedy Trial Clause was designed to protect, we note that Lampkin is not incarcerated and is on bond. Thus, the first interest is not implicated.

With regard to the second interest, at the hearing on the motion to dismiss, Lampkin's co-defendant (and daughter), Slack, testified that her mother had anxiety and was afraid to go anywhere because of her fear people will confront her about the incident in question. "But evidence of generalized anxiety, though relevant, is not sufficient proof of prejudice under the *Barker* test, especially when it is no greater anxiety or concern beyond the level normally associated with a criminal charge or investigation." *Cantu*, 253 S.W.3d at 286. Slack further testified that the complainant's daughter had approached Lampkin and attempted to attack her. We cannot conclude that the animosity between the complainant's family and Lampkin would have been alleviated by a speedy trial.

Finally, with regard to the third interest, Slack testified at the hearing that two potential witnesses for her and Lampkin's defense had passed away before the first trial date. According to Slack, both witnesses would have been able to testify about her and Lampkin's "peaceful and law-abiding character" and would have testified about the complainant's "history of violence." However, Slack admitted that other witnesses could be called to testify as to the same facts. Given that both witnesses passed away before the first trial date, any prejudice suffered by Lampkin as a result of these two witnesses not being able to testify could not be related to a violation of

Lampkin's right to a speedy trial. *See Cantu*, 253 S.W.3d at 280 (fourth *Barker* factor regarding prejudice is not measured from date of offense but from time accused is arrested or charged). We conclude Lampkin did not meet her burden of showing prejudice. *See id*. (explaining that the defendant has the burden of proving the assertion of the right and showing prejudice"). Thus, this fourth *Barker* factor weighs in favor of the State.

### E.  Balancing the Four Barker *Factors*

"Having addressed the four *Barker* factors, we must now balance them." *Balderas*, 517 S.W.3d at 773. Although "[r]eview of the individual *Barker* factors necessarily involves fact determinations and legal conclusions," "the balancing test as a whole is a purely legal question that we review de novo." *Id*. at 768. Further, we "apply the *Barker* balancing test with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's *actual and asserted interest* in a speedy trial has been infringed." *Id*. at 773 (quoting *Cantu*, 253 S.W.3d at 281) (emphasis added). Weighing in favor of finding a violation of Lampkin's speedy trial right is the first factor. However, the length of delay of eleven months is not excessive and should not be afforded much weight. *See id*. at 768. Similarly, even if the State contributed to a delay at the August trial setting, the second factor would weigh only slightly in Lampkin's favor. In contrast, the third and fourth factors weigh against Lampkin, with the third factor weighing heavily against her. Therefore, in balancing these four factors, we conclude Lampkin's right to a speedy trial was not violated.

### CONCLUSION

Because the trial court erred in granting Lampkin's motion to dismiss, we reverse the order of the trial court and remand the cause for further proceedings consistent with this opinion.

Liza A. Rodriguez, Justice

DO NOT PUBLISH