

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| THE STATE OF TEXAS, | § | No. 08-17-00060-CR |
|  | § |  |
| Appellant, | | Appeal from |
|  | § | |
| v. | | 243rd District Court |
|  | § | |
| CRUZ SUAREZ, | | of El Paso County, Texas |
|  | § | |
| Appellee. | | (TC # 20160D02068) |
|  | § | |

## **O P I N I O N**

In this appeal, we grapple with whether the trial court erred in dismissing an indictment based the State's supposed failure to provide a speedy trial. The State indicted Cruz Suarez for the aggravated sexual assault of child. The parties focus on three periods of delay: (1) the indictment came some eight-years after the alleged date of the crime; (2) sixty-nine days elapsed between the date of the indictment and the date Suarez was adjudged incompetent to stand trial, and ordered committed to a State psychiatric facility; (3) Suarez's commitment to that facility was delayed, and nine months following the indictment, he filed and the trial court heard a motion asserting his speedy trial rights. The trial court granted the motion and dismissed the case.

Because the record does not support a finding of the presumptive prejudice necessary to trigger a full *Barker v. Wingo*[1] inquiry, and even if it did, the balance would not favor Suarez, we reverse the dismissal order with a remand for further proceedings.

**BACKGROUND**

The underlying criminal case arises out the alleged aggravated sexual assault on a child younger than 14 years of age that took place on December 6, 2008. The grand jury returned the indictment charging Cruz Suarez with this crime on May 4, 2016. Suarez was arrested on May 19, 2016, and a magistrate promptly appointed counsel. Suarez's family apparently notified the appointed attorney that the then elderly Suarez "has the mind of a child" and that "he does not know what is going on." On May 25, 2016, appointed counsel filed a motion for a psychiatric exam because Suarez "appears incapable of understanding the proceedings against him." The trial court granted the motion, resulting in Jason D. Dunham, Ph.D. examining Suarez in June, and preparing a report on July 8, 2016. The report is in not in our record, but we can assume its conclusion comports with an agreed order on July 13, 2016, finding that Suarez was not competent to stand trial.[2] The trial court's order committed Suarez to an appropriate facility as determined by the DSHA State Hospital Forensic Admissions Clearinghouse. The order specifically required a 120-day commitment for examination and treatment, focused on restoring Suarez's competence to stand trial.

On November 15, 2016, the trial court issued a subsequent order reciting that Suarez was still incarcerated in the local jail and had not been transferred because of a lack of bed space at the treating facility. The order recites that Suarez is over 84 years old and that "time was of the

---

[1] *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

[2] A note in the billing records of Suarez's council states that the report diagnosed Suarez with "dementia and other ailments."

essence." The court ordered that Suarez be placed "at the top of the list for bed space" and that he be transferred and treated within twenty-one days of the order. On December 14, 2016, the trial court issued an order which would allow Suarez to bond out of jail on a $2,500 personal recognizance bond. A notation in the court's docket sheet, however, reflects the U.S. Immigration & Customs Enforcement (ICE) had a hold on Suarez. The note states that ICE may have picked Suarez up and deported him.

On February 1, 2017, Suarez's counsel filed a motion for a speedy trial, seeking "general relief." His counsel filed a second motion on February 13, 2017, that sought dismissal of the case. Following a non-evidentiary hearing two days later, at which Suarez did not appear, the trial court granted the motion and dismissed the indictment. Suarez's counsel represented at the hearing that "Immigration had a hold on him and sent him to Mexico or [he] went to Mexico on his own."

## APPLICABLE LAW AND STANDARD OF REVIEW

The Sixth Amendment protects the right to a speedy trial and the Fourteenth Amendment requires the States to respect that right. U.S. Const. amend. VI; *Henson v. State*, 407 S.W.3d 764, 766 (Tex.Crim.App. 2013); *see also* U.S. Const. amend. XIV; *Klopfer v. North Carolina*, 386 U.S. 213, 222-26, 87 S.Ct. 988, 993-95, 18 L.Ed.2d 1 (1967)(noting that the Sixth Amendment right to speedy trial applies to states by incorporation under Due Process Clause of Fourteenth Amendment). The Texas Constitution provides a similar protection which has been treated as co-extensive with the federal protection. Tex. Const. art. I, § 10; *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex.Crim.App. 2002). The right protects a defendant from "oppressive pretrial incarceration, mitigates the anxiety and concern accompanying public accusations, and ensures that the defendant can mount a defense." *Henson*, 407 S.W.3d at 766*, citing Barker*, 407 U.S. 514, 532, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

A speedy trial claim balances four factors: (1) the length of delay; (2) the reason for the delay; (3) whether the defendant asserted the right to a speedy trial; and (4) any prejudice to the defendant resulting from the delay. *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex.Crim.App. 2014), *citing Barker*, 407 U.S. at 530, 92 S.Ct. at 2192. The first factor, however, is something of a double factor. Before we balance all the factors, the accused is required to make a threshold showing that the length of the delay was "presumptively prejudicial." *See Gonzales*, 435 S.W.3d at 808. The length of the delay is therefore a "triggering mechanism" for analysis of the remaining *Barker* factors. *Id.* at 809; *see also State v. Munoz*, 991 S.W.2d 818, 821-22 (Tex.Crim.App.1999), *quoting Doggett v. United States*, 505 U.S. 647, 652 n.1, 112 S.Ct. 2686, 2691, 120 L.Ed.2d 520 (1992).

When all the *Barker* factors are considered, no factor is either a necessary or sufficient condition to the finding of a deprivation of a right to speedy trial. *Johnson v. State*, 954 S.W.2d 770, 772 (Tex.Crim.App. 1997), *citing Barker*, 407 U.S. at 533, 92 S.Ct. at 2193. Instead, these factors are related and must be considered together with such other circumstances that may be relevant. *Johnson*, 954 S.W.2d at 773. This balancing test requires weighing, case-by-case, "the conduct of both the prosecution and the defendant." *Munoz*, 991 S.W.2d at 821, *quoting Barker*, 407 U.S. at 530, 92 S.Ct. at 2192.

We apply a bifurcated standard of review to speedy-trial claims. *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex.Crim.App. 2002). The *Barker* factors necessarily involve fact determinations and legal conclusions. *Johnson*, 954 S.W.2d at 771. We review the trial court's decision under "an abuse of discretion standard for the factual components, and a *de novo* standard for the legal components." *Zamorano*, 84 S.W.3d at 648; *Palacios v. State*, 225 S.W.3d 162, 167 (Tex.App.--El Paso 2005, pet. ref'd). "The balancing test as a whole, however, is a purely legal

4

question" *Johnson*, 954 S.W.2d at 771. When the facts are largely undisputed, the primary issue for review is the legal significance of those facts. *Zamorano*, 84 S.W.3d at 648.

## DISCUSSION

The State's primary argument claims that there was not a delay sufficient to raise a presumption of prejudice, which obviates the need to examine all the *Barker v. Wingo* factors. Whether there is a sufficient delay turns on what time periods should be considered as part of the delay.[3]

### The pre-indictment delay is not part of the consideration

Suarez' speedy trial motion contended that the clock started to run for calculating the delay on December 6, 2008, the date of the alleged crime. That contention is clearly wrong.

The right to a speedy trial attaches when a person "becomes an accused," i.e., when he is arrested or when he is charged. *Henson*, 407 S.W.3d at 767.[4] Accordingly, a person who has not yet been arrested or formally charged cannot seek protection under the Speedy Trial Clause, and the State is not required "to discover, investigate, and accuse any person within any particular period of time." *U.S. v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971). Rather, "[a]ny delay between commission of the crime and indictment is controlled by the applicable statute of limitations." *Kroll v. United States,* 433 F.2d 1282, 1286 (5th Cir. 1970); *see also Marion*, 404 U.S. at 322; 92 S.Ct. at 464 (statute of limitations is "the primary guarantee against bringing overly stale criminal charges")(internal quotations omitted); *Moore v. State*, 943 S.W.2d 127, 128 (Tex.App.--Austin 1997, pet. ref'd)("The limit on preindictment delay is usually

---

[3] An *a priori* question is whether the trial court should have conducted any dispositive hearing until Suarez regained competence. *See* TEX.CODE CRIM.PROC.ANN. art. 46B.004 (d) and (e)(West 2018)(noting that upon the court's determination of incompetency, "all other proceedings in the case" should be stayed, other than acting on the State's motion to dismiss). This issue was not raised below, and so we do not decide it here.

[4] Suarez agrees with this proposition in the brief filed with this Court.

set by the statute of limitations."). Any pre-indictment delay might also be addressable on Fifth Amendment due process grounds. *Marion*, 404 U.S. at 313, 92 S.Ct. at 459; *State v. Krizan-Wilson*, 354 S.W.3d 808, 814 (Tex.Crim.App. 2011). But Suarez's motion to dismiss below was based solely on Sixth Amendment speedy trial grounds, and not on any statute of limitations, or Fifth Amendment due process grounds.[5]

Accordingly, we focus solely on a speedy trial clock running from May 4, 2016--the date of the indictment. *Henson*, 407 S.W.3d at 767.

### Did Suarez met the burden to show presumptive prejudice?

The first *Barker* factor asks if the movant has shown a delay long enough to create a presumption of some prejudice. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192. To do so, Suarez is required to show that the interval between accusation and trial crossed the threshold dividing "ordinary" from "presumptively prejudicial" delay. *Zamorano*, 84 S.W.3d at 648-49, *quoting Doggett*, 505 U.S. at 652, 112 S.Ct. at 2690. But given the "imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530-31, 92 S.Ct. at 2192. For this inquiry, the nature of the case is important. "[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id.* at 531, 92 S.Ct. at 2192.

The State argues that any delay ran only between May 4 (the date of indictment) and July 13 (the date Suarez was found incompetent), which totals 69 days. A necessary premise of the argument is that the State had no ability to take Suarez to trial so long as he was incompetent. The

---

[5] In any event, for pre-indictment delay based on due process, the movant must show (1) substantial prejudice, and (2) that the delay was an "intentional device used to gain a tactical advantage over the accused." *Krizan-Wilson*, 354 S.W.3d at 814-15; *see also Saul v. State*, 510 S.W.3d 672, 686 (Tex.App.--El Paso 2016, pet. ref'd). We cannot infer bad faith from the delay alone. *Saul*, 510 S.W.3d at 686. There was no evidence adduced as to the reason for the pre-indictment delay, other than the State's representation in a pleading that the child-victim delayed an outcry. Any implied finding to the contrary is not supported by the record, and we decline to affirm the ruling below on an unasserted and unsupported due process claim.

premise is a reasonable one, given that upon the court's determination of incompetency, the Code of Criminal Procedure requires that "all other proceedings in the case" should be stayed, other than acting on the State's motion to dismiss. *See* TEX.CODE CRIM.PROC.ANN. art. 46B.004 (d) and (e). Moreover, this Court has held that periods of incompetence are not counted on the speedy trial clock. *Love v. State*, 909 S.W.2d 930, 947-48 (Tex.App.--El Paso 1995, pet. ref'd). In *Love*, the defendant's trial was delayed in part for treatment to return him to competence. *Id.* We rejected the defendant's speedy trial claim, and cited to United States Supreme Court precedent stating that periods of mental incompetence are not considered in a speedy trial inquiry. *Dickey v. Florida*, 398 U.S. 30, 48, 90 S.Ct. 1564, 1574, 26 L.Ed.2d 26 (1970)(noting that a "defendant may be disentitled to the speedy-trial safeguard in the case of a delay for which he has, or shares, responsibility," citing the example of "delay occasioned by his incompetence to stand trial").

A delay of only 69 days in an aggravated sexual assault of a child case is not presumptively prejudicial, and would not trigger a full *Barker* analysis. While the time-period for presumptive prejudice is determined on a case-by-case basis, no case has concluded a period as short as this qualifies. *Cantu v. State*, 253 S.W.3d 273, 281 (Tex.Crim.App. 2008)("There is no set time element that triggers the analysis, but we have held that a delay of four months is not sufficient while a seventeen-month delay is."); *Pete v. State*, 501 S.W.2d 683, 687 (Tex.Crim.App. 1973) ("Appellant herein was tried [for rape] approximately four months after he was bench warranted from the Texas Department of Corrections. It is our opinion that this short period of time could in no way be construed as 'presumptively prejudicial.'").

Suarez responds in part that the delay is longer than 69 days. He argues it extends from the date of indictment to the date of the hearing which is just over nine months. Suarez discounts any periods of his mental incompetence because the State must be charged with the delay in

transferring him to a psychiatric facility which could have restored his competence. By analogy, a court does not excuse a delay caused by overcrowded court dockets. *See Barker*, 407 U.S. at 531, 92 S.Ct. at 2912 (noting that a delay caused by overcrowded courts should still count against the State, though weighted less heavily). Suarez contends by the same token that overcrowded mental wards cannot excuse a delay. And a nine month delay might implicate a period of presumptive prejudice. *See Doggett*, 505 U.S. at 652 n.1, 112 S.Ct. at 2691 ("Depending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year."); *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex.Crim.App. 2003)(noting the same).

While we appreciate the similarities between crowded court dockets, and crowded psychiatric hospitals, we also note the differences. The State shoulders the burden of spending adequate resources to provide the logistics of trying the criminal cases that it indicts. And certainly when the State builds and staffs additional courts, it is guaranteed to increase its capacity to try more cases. It is not unlike opening an additional check-stand in a grocery store. By contrast, opening more beds in a psychiatric hospital does not guarantee that a defendant will ever gain competence. It assures only that the defendant could be moved from the jail to the facility. Once at the facility, the psychiatric outcome is a function of the defendant's mental condition, perhaps his or her own participation in the therapy, and the skill of the mental health provider. Suarez assumes that had he been transferred to hospital, he would have been rehabilitated to a level of competence. Nothing in our record would support that assumption. Nor does the record show how long that process might have taken. Thus even accepting Suarez's argument that delays in transferring him to a hospital counts on the speedy trial clock, we cannot count all the time against

8

the State, and there is no evidence in the record to support any particular time to be counted against the State.[6]

Accordingly, we conclude that the only period of proven delay on this record amounts to 69 days which does not meet the initial burden of showing presumptive prejudice. Assuming without deciding that the State can be charged with the delay in transferring Suarez to a psychiatric hospital for treatment, there is no evidence in the record to support an implied finding that the total period of delay is sufficient to demonstrate presumptive prejudice.

**Alternatively, consideration of the Barker factors do not support Suarez' claim**

Even if we assumed that the record supported a finding of a delay sufficient to create presumptive prejudice, a balancing of the *Barker* factors cuts against Suarez. As to factual disputes, we defer to the trial court's role as fact finder. But neither Suarez, nor the State presented any evidence or testimony at the hearing below, nor did they attach any evidence to the motion or response. Whatever facts play into this dispute are manifest from the clerk's record. We therefore engage in largely a *de novo* review.

*1. Length of delay.*

"When the length of delay stretches *well beyond* the bare minimum needed to trigger a full *Barker* analysis, the length of a delay weighs against the State, and the longer the delay, the more the defendant's prejudice is compounded." [Emphasis added]. *Gonzales*, 435 S.W.3d at 809, *citing Zamorano*, 84 S.W.3d at 649. We have already explained why the delay here does not meet the threshold to trigger a *Barker* analysis, and only through making several assumptions, does it

---

[6] At the hearing, the trial court asked the prosecutor to explain "the 211 days he spent incarcerated." It was unclear from the hearing how this particular length of delay was calculated, as it does not correspond to any significant event following the date of indictment.

rise to the absolute lowest limit of the threshold. Accordingly, the delay is not *well beyond* the minimum threshold, and this factor weighs in the State's favor.

  *2. Reason for delay.*

  In assessing the significance of any delay, we must determine "whether the government or the criminal defendant is more to blame for th[e] delay," *Doggett*, 505 U.S. at 651, 112 S.Ct. at 2690. Different weight is accorded to delays based on the reason for the delay. *Hopper v. State*, 520 S.W.3d 915, 924 (Tex.Crim.App. 2017). For instance, a deliberate delay "to hamper the defense" weighs heavily against the State. *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192. Yet a "more neutral reason such as negligence or overcrowded courts" weigh less heavily "but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id*. A valid reason for the delay should not be weighed against the government at all. *Gonzales*, 435 S.W.3d at 810 ("Unjustifiable reasons for delay count towards the 'length of delay,' while justifiable reasons for delay do not."); *Munoz*, 991 S.W.2d at 822. And a delay caused by the defendant might rise to the level of a waiver. *Id.*

  Analyzed in that light, not all of the time between indictment and the speedy trial hearing would count, or if it counted, would it be weighted equally. Suarez's counsel almost immediately filed a motion for a mental examination, stating in the motion concerns with his client's competence. The State could hardly force a trial until the motion was acted upon. And once the motion was granted, the State could hardly move to force a trial until Suarez was examined. Accordingly, we do not count any of the time between the filing of the motion (May 25, 2016) and the date of the commitment order (July 13, 2016) against the State. Once the commitment order was signed, the State could not move to set the case for trial. And even assuming the State was responsible for a delay in sending Suarez to a psychiatric hospital, the order contemplated that

Suarez would be committed for 120 days. Accordingly, we do not count that three-month time period against the State. In other words, we would not count the time that otherwise would be attributed to Suarez's mental condition under the ideal circumstances of the commitment order. *See Dickey*, 398 U.S. at 48, 90 S.Ct. at 1574; *Love*, 909 S.W.2d at 947-48; *Barnes v. State*, 03-13-00434-CR, 2016 WL 3917126, at *6 (Tex.App.--Austin July 13, 2016, pet. ref'd), *cert. denied,* 2018 WL 1786049 (U.S. Apr. 16, 2018)(mem. op., not designated for publication)(discounting periods of time caused by defendant, including trial delays from the determination of, and restoration of competency to stand trial).

It also appears that sometime after December 14, 2016, Suarez was released on bond, but taken by ICE, and either deported, or he agreed to go to Mexico. Nothing in the record shows how the State of Texas after that date would have compelled Suarez to go to a treatment facility, or if it could, how long the mechanics of such an effort might have taken. We therefore do not count that time against the State. In summary, even if we were to assume that the delay period runs from the date of indictment to the date of the hearing, after discounting periods that cannot be attributed to the State, the remaining period of delay weighs in the State's favor.

*3. Assertion of the right.*

In *Barker*, the Court explicitly rejected a strict "demand-waiver" rule that would effectively toll the speedy trial clock until the defendant demanded a trial date. *Barker*, 407 U.S. at 528, 92 S.Ct. at 2190. A defendant has no duty to bring himself to trial; rather that is the State's duty. *Cantu*, 253 S.W.3d at 282-83. Yet a defendant has some responsibility to assert their rights. *Id.* Accordingly, in *Barker* the Court concluded that "the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right." *Id.*; *see also Hopper*, 520 S.W.3d at 924.

11

In assessing the weight of this factor, we consider whether and how a defendant asserts the speedy trial right. *Cantu*, 253 S.W.3d at 282-83. "Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one." *Id*. "Repeated requests for a speedy trial weigh heavily in favor of the defendant," while the absence of those requests suggest the defendant seeks only a dismissal. *Id*.

Our record shows that a few days shy of nine months following the indictment, Suarez's counsel filed a motion asserting his speedy trial rights. The motion sought "general relief." Twelve days later, counsel filed a second motion that sought dismissal of the indictment. The trial court heard the motions two days later. Suarez at the time was apparently out of the country, and nothing suggests he ever obtained any level of competence so as to participate in the proceedings. These circumstances--late assertion of the right at a time when Suarez was not available or competent for trial--if anything suggest the motion here sought dismissal rather than vindication of the right. The factor is neutral or weighs against Suarez.

*4. Prejudice from the delay.*

The last factor is prejudice to the defendant. *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193. That prejudice can take several forms: (1) the burden of pretrial incarceration; (2) the anxiety and concern of the accused (i.e. public scorn); and (3) impairing the ability to defend the case (i.e. lost witnesses and fading recollections). *Id*. Prejudice to the defense's case is the most important consideration. *Id*. It is also the most difficult to prove, because lost memories are "not always reflected in the record" and "what has been forgotten can rarely be shown." *Id.*; *see also Doggett,* 505 U.S. at 655, 112 S.Ct. at 2693 ("Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify.").

12

Nonetheless, the defendant carries the burden to show prejudice. *Cantu*, 253 S.W.3d at 280. The defendant's burden of proof on "[prejudice] 'varies inversely' with the State's degree of culpability for the delay." *Id. citing to Doggett*, 505 U.S. at 657, 112 S.Ct. at 2693. "Thus, the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Cantu*, 253 S.W.3d at 280-81. Additionally, and to ameliorate a defendant's burden, in a case of *extraordinary* delay, the courts have excused the need for affirmative evidence of prejudice to the defense's case. *Shaw v. State,* 117 S.W.3d 883, 890 (Tex.Crim.App. 2003), *citing Doggett,* 505 U.S. at 655, 112 S.Ct. 2686. The courts excuse that need for affirmative evidence, however, when the period of delay is measured in several years, and not, as here, in a matter of months. *See Gonzales*, 435 S.W.3d at 812-15 (discussing federal cases with delays ranging from five to ten years applying a presumption). In *Gonzales*, the court relieved the defendant of the burden of affirmative evidence of prejudice to his defense based on a six-year delay. *Id*. The at most nine-month delay here is not extraordinary and would not relieve Suarez of his burden to show actual prejudice.

Yet Suarez made no attempt to present any evidence of the three types of prejudice, other than what is manifest from the record. We know only that Suarez was arrested on May 16, 2016 and released sometime after December 14, 2016. Some periods of delay are inevitable in the criminal process. *Doggett*, 505 U.S. at 656, 112 S.Ct. at 2693 ("Our speedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable."). Some periods of incarceration were specifically unavoidable in Suarez's case owing to his mental state; he would have been constrained either in a psychiatric facility or jail, no matter what actions the State undertook. When the State was unable to place Suarez in a psychiatric facility, the trial court

13

reduced his bond, allowing for his release. Any prejudice from pretrial incarceration only marginally weighs in favor of Suarez.

Nor did Suarez present any evidence as to how the pendency of the charges affected him, or whether he even appreciated that he was being charged with a crime. This type of prejudice is neutral at best on the record before us.

Suarez presented no evidence of any actual harm to his defense from the delay. He did not, for instance, show that any witnesses were lost in the nine months following the indictment, as distinct from the eight years between the time of the crime and the indictment. Moreover, delay can either help or hurt the defendant. *Barker*, 407 U.S. at 521, 92 S.Ct. at 2187. Nothing in the record would support a finding that the delay necessarily worked a detriment, as opposed to a benefit on the merits defense of the case. The record at most would support an implied finding that the prejudice element is effectively neutral.

We conclude that even if a full consideration of the *Barker* factors is warranted, the balance of the factors are essentially neutral to somewhat in the State's favor, and do not justify dismissal of the serious charge indicted below. We grant the State's single issue on appeal.

## CONCLUSION

We can sympathize with a trial judge who, wishing to move the docket, cannot convince a State psychiatric hospital to open up bed space.[7] The situation is compounded by a defendant who,

---

[7] The situation is unfortunately not unique. A December 2016 report by the Texas Council of Community Centers noted:

> From 1964 to 2016, the Texas population rose from 10.3 to 28.2 million people, almost tripling in just over fifty years. Despite astounding population growth, the number of inpatient psychiatric beds in Texas State Hospitals shrank by almost 80% during this time, from 14,921 to 3,013 beds. Demand for both forensic and civil psychiatric beds far outpaces current State Hospital system capacity, placing severe strain on local communities, jails and hospital systems. . . . Lack of inpatient psychiatric bed capacity in State Hospitals creates a host of issues, including a growing backlog of individuals in county jails waiting for court-ordered forensic services, and inappropriate stays in emergency rooms, extended observations units, crisis stabilization units and local private psychiatric hospitals. When State Hospitals are full and an alternate private psychiatric bed is either

14

in the twilight of his years, sits in jail and once bonded out, finds himself across the international border. It would be tempting--for all concerned--to dispose of the case on some procedural ground. Yet we are constrained by the law, and particularly the requirement to show prejudice under the *Barker v. Wingo* test. None is shown on this record, and we accordingly reverse the trial court's dismissal and remand the case.

August 31, 2018

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

---

not available or is unable to provide the clinically appropriate level of care, people remain in the community without needed intervention and cycle into emergency rooms or jails.

http://txcouncil.com/wp-content/uploads/2016/12/Inpatient-Psychiatric-Care-Issue-Brief-121616-Updated-12417.pdf (last visited May 3, 2018).