**Opinion issued June 27, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00257-CR

———————————

**THE STATE OF TEXAS, Appellant**

**V.**

**SAMUEL HUDSON, Appellee**

---

**On Appeal from the County Court at Law No. 4**
**Fort Bend County, Texas**
**Trial Court Case No. 17-CCR-193400**

---

## MEMORANDUM OPINION

Appellant, the State of Texas, challenges the trial court's order granting the

motion of appellee, Samuel Hudson, to dismiss the information accusing him of the

misdemeanor offense of driving while intoxicated ("DWI").[1]  In its sole issue, the State argues that the trial court erred in granting appellee's motion to dismiss.

We reverse and remand.

## Background

On May 23, 2017, the State filed an information against appellee, accusing him of DWI.  The complaint alleged that on or about August 27, 2015, appellee operated a motor vehicle in a public place while intoxicated.

On October 9, 2017, appellee filed a motion to dismiss for failure to provide a speedy trial.  In his motion, appellee alleged that the "643 days" or "over 21 month delay" in his case, "between the time of the alleged incident and the issuance of the summons on June 1, 2017," was presumptively unreasonable and prejudicial, and he requested that the trial court dismiss the information against him for "failure to provide a speedy trial in direct violation of the Sixth and Fourteenth Amendments to the U.S. Constitution, and Art. 1 Sec. 10 of the Texas Constitution and Art. 1.05 of the Texas Code of Criminal Procedure."

At a hearing before the trial court on appellee's motion to dismiss, Sugarland Police Department ("SPD") Officer Mike Bieltz testified that on August 27, 2015, he was dispatched to a scene in response to a complaint about a reckless driver. Upon arriving at the scene, Bieltz discovered appellee unconscious inside a vehicle.

---

[1]  TEX. PEN. CODE ANN. § 49.04.

2

As emergency medical service ("EMS") professionals attempted to wake appellee up, Bieltz observed that appellee's eyes were "kind of glassy," he "had slurred speech," and did not "really kn[o]w where he was."

Officer Bieltz testified that EMS transferred appellee directly from the scene to Sugar Land Methodist Hospital. At the hospital, Bieltz advised appellee that he was "not under arrest." Bieltz then read appellee a "DIC-24 form," which provides, in relevant part:

> You are under arrest for an offense arising out of acts alleged to have been committed while you were operating a motor vehicle . . . in a public place while intoxicated . . . . You will be asked to give a specimen of your breath and/or blood. The specimen will be analyzed to determine the alcohol concentration or the presence of a controlled substance, drug, dangerous drug or other substance in your body.
>
> If you refuse to give the specimen, the refusal may be admissible in a subsequent prosecution. Your license, permit or privilege to operate a motor vehicle will be suspended or denied for not less than 180 days, whether or not you are subsequently prosecuted for this offense.

Bieltz further testified that the appellee "appeared to . . . understand[]" him, and Bieltz had no reason to believe that appellee did not hear him when he told him that he was not under arrest. No field sobriety tests were performed, but appellee consented to giving a blood specimen. His blood was subsequently drawn by a nurse at the hospital, and Bieltz "packaged" the vials of blood and transported them to a refrigerator in the evidence room at the SPD station where this type of evidence is stored. Then, an "evidence tech" sent the vials of appellee's blood to an outside

3

source for testing. Bieltz's DWI investigation was put on hold pending the results of appellee's blood analysis.

Officer Bieltz testified that "the normal process" is that blood-testing results will be sent to the "evidence tech" and that Bieltz is not involved in the case again until trial. However, in this case, the blood-testing results were sent to Bieltz directly by email on December 2015. He does not recall receiving the email containing the results at that time and testified that he did not discover the results until sometime later. The results confirmed the presence of narcotics in appellee's blood, and the case was forwarded to the District Attorney's Office. Bieltz further testified that no charges would have been filed if the blood-testing results had not confirmed the presence of narcotics or alcohol in appellee's blood.

The trial court granted appellee's motion to dismiss for failure to grant a speedy trial and entered the following findings of fact and conclusions of law:

### *Findings of Fact*

1. On February 26, 2018[,] the Court heard the testimony of Officer Bieltz, received exhibits admitted by the parties, and heard the arguments of counsel.

2. The Court found the testimony of Officer Bieltz credible.

3. Officer Bieltz testified that on August 27, 2015 he was dispatched to Sugar Land, Fort Bend County, Texas in reference to a reckless driver.

4. When Officer Bieltz arrived at the reported location[,] the driver appeared to be passed out[] and was not responding to any of

4

Officer Bieltz's attempts to make contact with him. The driver was later identified as Samuel Hudson, the [d]efendant in this case.

5. Due to Hudson being unresponsive, Officer Bieltz had EMS make contact with him and attempt to evaluate him. While Hudson was talking to EMS, Officer Bieltz observed Hudson to have glassy eyes, droopy eyelids, and slurred speech. After EMS checked Hudson's vital signs[,] they determined Hudson needed medical attention and transported him to Sugar Land Methodist Hospital. One of the medics on scene told Officer Bieltz that Hudson admitted to taking drugs.

6. Officer Bieltz went to Sugar Land Methodist Hospital and told Hudson he was not under arrest, and asked Hudson if he would be willing to submit to a blood draw. Officer Bieltz requested Hudson's blood using the DIC 24 form. Hudson consented to provide a specimen of his blood. A specimen of Hudson's blood was drawn and submitted for analysis for drugs and alcohol. Due to Hudson's condition, no field sobriety tests were performed and he was not taken into custody.

7. The case was held pending the results of the blood analysis. Officer Bieltz received the blood results via email on December 31, 2015, but did not discover the email containing the results until sometime later. Once the results were discovered, and because they confirmed the presence of drugs, the case was sent to the District Attorney's Office for filing.

8. Officer Bieltz testified that [the] nine months that elapsed between when the blood results were emailed to him and when he discovered them, was due to an apparent "shuffling through the cracks." Officer Bieltz further testified that if the results had not shown any drugs or alcohol, he would not have sent the case [to] the District Attorney's Office for filing.

9. The case proceeded as follows:[2]

| 05/23/2017 | State filed this DWI case. |
| 06/01/2017 | A summons was mailed to [Hudson] to appear on |

---

[2]     The record reflects that the trial court took judicial notice of the record in this case as set forth in its Findings of Fact.

| | July 21, 2017. |
|---|---|
| 07/21/2017 | [Hudson] appeared [] in court with retained counsel and reset case. |
| 10/09/2017 | [Hudson] filed Motion to Dismiss for Failure to Provide a Speedy Trial. |
| 10/10/2017 | [Hudson] appeared with counsel and reset case for hearing on motion to dismiss. |
| 12/08/2017 | [Hudson] appeared with counsel and reset case. |
| 12/19/2017 | [Hudson] appeared with counsel and the Court reset case. |
| 02/26/2018 | Hearing on [Hudson]'s Motion to Dismiss. |
| 02/27/2018 | The Court signed an order granting [Hudson]'s Motion to Dismiss. |

### *Conclusions of Law*

10. The relevant interval of time for the speedy trial analysis in this case was measured from August 2[7], 2015, the date of the alleged offense, to June 1, 2017, the date the summons was issued. The delay was 643 days, or over 21 months.

11. A delay of over 21 months was sufficient to trigger a speedy trial analysis.

12. **The Length of the delay.** The first factor weighed against the State, because the delay stretched well beyond the minimum required to trigger the speedy trial analysis.

13. **The Reason for the delay.** The second factor also weighed against the State, because the delay was due to Officer Bieltz's negligence in failing to discover the blood results had been emailed to him.

14. **Assertion of the Right.** The third factor weighed against [Hudson], because the record shows that [he] failed to request a speedy trial before filing for a dismissal. *Cantu v. State*, 253 S.W.3d 273, 282–[]83 (Tex. Crim. App. 2008).

15. **Prejudice.** The fourth factor also weighed against [Hudson]. [He] did not testify or offer any evidence from which the Court could conclude he was prejudiced by the delay, thus he failed to

make a prima facie showing of prejudice. *Barker v. Wingo*, 407 U.S. 514, 532 (1972).

16. **Balance of the factors**. In balancing the factors the Court concluded that the length of the delay and the reason for delay were so excessive and unjustifiable, that they outweighed [Hudson]'s failures to assert his speedy-trial right, and make a prima facie showing of prejudice.

## Standard of Review

We review a trial court's ruling on a claim of the denial of the right to a speedy trial under a bifurcated standard of review. *See Cantu v. State*, 253 S.W.3d 273, 282 (Tex. Crim. App. 2008). We review factual issues for an abuse of discretion and legal issues de novo. *Id.*

## Right to Speedy Trial

In its sole issue, the State argues that the trial court erred in granting appellee's motion to dismiss because appellee's right to a speedy trial was not violated.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant a speedy trial, and the sole remedy when he is deprived of that right is dismissal. *See* U.S. CONST. amend. VI; *Barker v. Wingo*, 407 U.S. 514, 522 (1972). The applicability of the right to a speedy trial is limited only to an accused. *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014). Therefore, a person who has not been formally charged cannot seek protection from the speedy-trial clause for the State's failure to "to discover, investigate, and accuse a person within any particular period of time." *Id.* (quoting *United States v. Marion*, 404 U.S. 307, 313,

7

320 (1971)).  Instead, "[a]ny delay between commission of a crime and indictment is governed by the applicable statute of limitations."  *Id.* (alteration in original).

### A.    The *Barker* factors

To determine whether an accused was deprived of the right to a speedy trial, we weigh and balance the following four factors set forth by the United States Supreme Court in *Barker*: (1) the length of the delay; (2) the reason for the delay; (3) the accused's assertion of his speedy-trial right; and (4) the prejudice to the accused's resulting from the delay.  407 U.S. at 530; *see also Cantu*, 253 S.W.3d at 280.  "However, before a court engages in an analysis of each *Barker* factor, the accused must first make a threshold showing that 'the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay."  *Gonzales*, 435 S.W.3d at 808 (quoting *Doggett v. United States*, 505 U.S. 647, 651–52 (1992)).  The length of the delay acts as a "triggering mechanism" for analysis of the remaining three *Barker* factors.  *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002) (citing *Barker*, 407 U.S. at 530).  "Unless the delay is presumptively prejudicial, courts need not inquire into examine the other three factors."  *Id.*

When reviewing application of the *Barker* factors, we give almost total deference to the historical findings of fact made by the trial court if supported by the record and draw inferences from those facts necessary to support the trial court's

8

findings. *Gonzales*, 435 S.W.3d at 808–09. However, we review de novo whether there was sufficient presumptive prejudice to proceed to a full *Barker* analysis and weigh the remaining *Barker* factors. *Id.* at 809. The "balancing test as a whole . . . is purely a legal question." *Zamorano*, 84 S.W.3d at 648 n.19 (alteration in original) (quoting *Johnson v. State*, 954 S.W.2d 770, 771 (Tex. Crim. App. 1997)).

**B.     Presumptive prejudice and length of delay**

To determine whether the length of delay is presumptively prejudicial, we must first calculate the delay. *Gonzales*, 435 S.W.3d at 809. The length of the delay is measured from the time the defendant is arrested or formally accused. *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003); *Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992). Notably, the length of the delay that will provoke a speedy-trial inquiry is "necessarily dependent upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530–31. If the delay is more than "ordinary," it is subject to the speedy-trial analysis; the longer the delay, the greater the presumption of prejudice to the defendant. *Zamorano*, 84 S.W.3d at 649 (internal quotations omitted). There is no set time for triggering the analysis, but "a delay of four months is not sufficient while a seventeen-month delay is." *Cantu*, 253 S.W.3d at 281; *see also Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003) ("In general, delay approaching one year is sufficient to trigger a speedy trial inquiry."); *Harris*, 827 S.W.2d at 954 (recognizing courts generally hold any delay eight months or longer

is presumptively unreasonable and triggers speedy-trial analysis; holding thirteen-month delay in case "prima facie" unreasonable under circumstances presented).[3]

Here, the parties disagree as to the date on which the right to a speedy trial attaches in this case for purposes of calculating the length of the delay. The State argues that the trial court erred in calculating the delay from the date of commission of the alleged offense because appellee was not arrested at any time before the State filed formal charges against him on May 23, 2017—resulting in an approximately four-month delay. Thus, the State further asserts that appellee was not an accused person, and the right to a speedy trial did not attach, until that time. Appellee argues that he became an accused person on August 27, 2015, the date of the alleged offense, because he was placed under arrest at the hospital when Officer Bieltz read him the warnings in a DIC-24 form, which included the statement "You are under arrest," and collected a blood sample from him for narcotics and alcohol testing. For this reason, according to appellee, there was an approximately twenty-one-month delay in this case.

---

[3] *See also Doggett v. United States,* 505 U.S. 647, 651, 652 n. 1 (noting that courts "have generally found post[-]accusation delay 'presumptively prejudicial' at least as it approaches one year"); *Phillips v. State,* 650 S.W.2d 396, 399 (Tex. Crim. App. 1983) ("Although there 'is no precise length of delay which irrefutably constitutes a violation of the right to a speedy trial in all cases,' . . . a seventeen[-]month delay is sufficient to raise the issue." (citation omitted)); *Pete v. State,* 501 S.W.2d 683, 687 (Tex. Crim. App. 1973) ("[Defendant] herein was tried [for the offense of rape] approximately four months after he was bench warranted from the Texas Department of Corrections. It is our opinion that this short period of time could in no way be construed as 'presumptively prejudicial.'").

"A person is arrested when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer or person arresting without a warrant." TEX. CODE CRIM. PROC. ANN. art. 15.22. "A person is in 'custody' only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing *Stansbury v. California*, 511 U.S. 318 (1994)). "The mere fact that an officer makes the statement to an accused that he is under arrest does not complete that arrest. *There must be custody or detention and submission to such arrest*." *Medford v. State*, 13 S.W.3d 769, 772–73 (Tex. Crim. App. 2000) (emphasis in original) (internal quotations omitted). And, "it is not the actual, physical taking into custody that will constitute an arrest. An arrest is complete whenever a person's liberty of movement is restricted or restrained." *Id.* at 773 (internal quotations and citation omitted). There are four general situations that may constitute custody: (1) when an individual is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the person that he is not free to leave, (3) when a law enforcement officer creates a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, or (4) when there is probable cause to arrest the person and law enforcement officers do not tell the person that he is free to leave. *Dowthitt*, 931 S.W.2d at 255.

Here, the trial court issued a finding of fact that appellee was "not taken into custody" on the day of the offense. We give almost total deference to the trial court's findings of fact if supported by the record. *Gonzales*, 435 S.W.3d at 808-09. From the record, other than the statement read by Officer Bieltz from the DIC-24 form, there is nothing to indicate appellee was taken into custody. He was transported to the hospital by EMS and was never handcuffed or transported to jail. And there is no evidence to suggest that appellee was restrained, told he could not leave upon discharge, or otherwise taken into custody. Therefore, we find that the evidence in the record supports the trial court's finding of fact that appellee was not placed in custody on the day of the offense.[4]

Accordingly, we hold that appellee was not placed under arrest on the date of the offense and his right to a speedy trial in the case did not attach until formal charges were filed against him. We further hold that the approximately four-month

---

[4]    The cases cited by appellee to support his argument that the reading of the DIC-24 form constituted an arrest concern the issues of arrest and consent in the context of the admissibility of a blood test. Regardless, whether a person has been taken into custody is a factual determination, which is evaluated on a case-by-case basis. *See Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996) (explaining determination of custody made on case-by-case basis considering all surrounding circumstances). We defer to the trial court's fact-finding in this case. *See Gonzales v. State*, 435 S.W.3d 801, 808–09 (Tex. Crim. App. 2014). And there are courts which have determined that reading the statement "You are under arrest" from a DIC-24 form is not sufficient to trigger the speedy-trial analysis. *See, e.g., State v. Tatum*, No. 05-14-01246, 2015 WL 4931445, at *3–4 (Tex. App.—Dallas Aug. 18, 2015, no pet.) (mem. op.) (determining DIC-24 form did not result in arrest and defendant not formally accused, and clock did not begin to run, until later date).

delay in this case—from the date formal charges were filed against appellee until he filed his motion to dismiss on October 10, 2017—is insufficient as a matter of law to trigger the *Barker* analysis because a four-month delay is not presumptively prejudicial. *E.g.*, *Pete v. State*, 501 S.W.2d 683, 687 (Tex. Crim. App. 1973) (holding span of approximately four months between bench warrant and trial not presumptively prejudicial). And under the circumstances of this case, this short time could in no way be construed as "presumptively prejudicial."

Accordingly, we hold that appellee's right to a speedy trial was not abridged, and the trial court erred in granting appellee's motion to dismiss.

We sustain the State's sole issue.

## Conclusion

We reverse the dismissal order of the trial court and remand for further proceedings consistent with this opinion.

Julie Countiss
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.

Do not publish. TEX. R. APP. P. 47.2(b).