**Affirm and Opinion Filed August 11, 2023**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-22-00121-CR

### MARION RAY MOSLEY, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 194th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1957997-M**

## MEMORANDUM OPINION

Before Justices Molberg, Pedersen, III, and Miskel
Opinion by Justice Pedersen, III

Following a bench trial, appellant Marion Ray Mosley was found guilty of intoxication assault and sentenced to two years' confinement. In this Court Mosley raises two issues: whether sufficient evidence supported the trial court's judgment and whether he was denied the speedy trial guaranteed by the United States Constitution. The State asks us to correct certain clerical errors in the judgment. As modified, we affirm the trial court's judgment.

### BACKGROUND

Appellant was driving at a high rate of speed on Central Expressway in Dallas early in the morning of September 4, 2019. He lost control of the car as he passed a

slower vehicle. His car first struck the median guardrail on his left and then spun back across the highway and struck the guardrail on the right side of the highway. Appellant's brother-in-law, Charles Elliott, was a passenger in the front seat at the time of the accident; he was ejected from the car.

Police and Fire-Rescue arrived at the scene. Elliott was taken by ambulance to Baylor University Medical Center (Baylor). Appellant was given, and failed, a series of field sobriety tests. Pursuant to a warrant, his blood was drawn and tested. His blood alcohol content was determined to be above the legal limit, and he was arrested.[1]

The State indicted appellant on December 12, 2019, charging him with intoxication assault that caused serious bodily injury to Elliott. The indictment also alleged that appellant used his vehicle as a deadly weapon.

Appellant entered a plea of not guilty and proceeded to trial before the court on November 19, 2021. The trial court found him guilty; this appeal followed.

---

[1] Appellant explains in his briefing that at the time of the accident, he was "free on parole for the Aggravated Sexual Assault convict[ion] dated June 4, 1992 in *State v. Mosley*, No. F92-02199 (283rd Dist. Ct. Dallas Co.), for which he received life in prison." His arrest for intoxication assault was a violation of his parole that required his continued incarceration.

## DISCUSSION

Appellant contends that insufficient evidence supported the court's guilty verdict and that he was denied a speedy trial.

### Sufficiency of the Evidence

A person commits intoxication assault if, by accident or mistake, while operating a motor vehicle in a public place, while intoxicated, and by reason of that intoxication, he causes serious bodily injury to another person. TEX. PENAL CODE ANN. § 49.07(a)(1). In his first issue, appellant argues that insufficient evidence supports the trial court's verdict. He concedes that the record contains evidentiary support for the court's implicit findings that his vehicle was involved in a crash, that he was driving the vehicle, that he was intoxicated at the time, and that Elliott was a passenger in the vehicle. But appellant argues there was insufficient evidence that Elliott's injuries were in fact serious bodily injuries and that Elliott's injuries were caused by the crash.

### Standard of Review

We review appellant's challenge by examining the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not evaluate the weight of the evidence. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Nor do we replace the factfinder's judgment with our own. *Id*. Instead, we defer to the factfinder to

resolve conflicts in testimony and to draw reasonable inferences from basic facts to ultimate facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

*Serious Bodily Injuries*

The Penal Code defines "serious bodily injury" in this context to mean "injury that creates a substantial risk of death or that causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." PENAL § 49.07(b). Appellant complains that "[n]o one with personal knowledge of the nature of the trauma or mechanism of the injury testified that the injury was [a serious bodily injury]." However, the State offered extensive medical records from Baylor that identified the nature of Elliott's injuries and the treatment necessary to address them.

Elliott was examined on arrival at Baylor by a trauma surgeon who determined that Elliott had injured both his left hand and left hip. He suffered a tear in his wrist's scapholunar ligament, which caused pain and required splinting to keep wrist bones in place. He also suffered a "traumatic left acetabular fracture," i.e., a fracture in the socket portion of his hip joint. His femur was dislocated and had to be placed back into the socket in the emergency room. Doctors advised that Elliott would require a total hip replacement once he had healed sufficiently.

Elliott remained in the hospital for six days. Along with the medical treatment he received for his injuries, he was seen by occupational and physical therapists. Their records indicate that Elliott was significantly impaired in his mobility and his

–4–

daily life activities.[2] Throughout his time at Baylor, Elliott reported pain in both his hand and his hip; he consistently assessed his pain at "8" or higher on a scale of 1 to 10.

Elliott was discharged to a skilled nursing facility. Therapists recommended he receive two hours of skilled therapy per day at the nursing facility "to maximize functional mobility and independence in efforts to return patient to [his] prior level of function and living situation." Among his medicines at discharge was Tramadol for pain.

We conclude that Elliott's medical records provided ample direct evidence that he suffered a significant hand injury. Those records also evidence a significant injury and protracted impairment of the function of his hip. *See* PENAL § 49.07(b). Accordingly, a rational factfinder could have concluded beyond a reasonable doubt that Elliott suffered serious bodily injuries within the meaning of the intoxication assault statute. *See Jackson*, 443 U.S. at 319.

*Injuries Caused by the Accident*

Appellant also argues that the evidence was insufficient to prove that Elliott's injuries were caused by the accident on September 4, 2019. Elliott did not testify at trial; the trial court had to rely on circumstantial evidence that the serious hip and

---

[2] Among Elliott's limitations were "balance; endurance/activity tolerance; pain; range of motion (ROM); [and] strength."

hand injuries he suffered were in fact caused by the accident. "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13.

We have reviewed the record for evidence of Elliott's condition before the accident. Elliott "came by" appellant's home, asking for a ride at approximately 11:00 p.m. the night before the accident. We do not know how Elliott arrived there, although his medical records indicate that he later repeatedly expressed concern over the location of his car. His records indicate that he resided alone in a "residential facility." Whether he walked to appellant's home, or just walked from his car to appellant's, he was mobile to some extent. He was willing and able to ride in appellant's car. And together, the men spent some two hours visiting at an apartment in Dallas. In addition, appellant testified that, just before the accident, he got on the freeway, intending "to get off on Pine where I live." The men were headed home, not to get medical help for an injury that had already happened.

As to Elliott's condition immediately after the accident, it is undisputed that he was ejected from the car and was taken from the scene by ambulance. Dallas Fire-Rescue paramedics arrived at the scene moments after 1:00 a.m. and transported Elliott to Baylor. Their Incident Report, admitted among Elliott's medical records, stated that Elliott was involved in a single-vehicle accident. The paramedics'

primary impression was "Trauma: Dislocation Hip," and Elliott's primary symptom was "Pain/Injury-Pelvis."

At Baylor, Elliott was admitted to the hospital's trauma center. His medical records describe his fractured and dislocated hip and his injured hand. He complained of pain at his initial examination and throughout the six days he spent at Baylor. Records from his occupational and physical therapists indicate that his mobility and ability to care for himself were severely hampered. Shortly after the accident, Senior Corporal Ricardo Rodriguez attempted to interview Elliott at Baylor. He testified that Elliott was "in a lot of pain" and "he was not able to really speak to me."

A reasonable factfinder could have inferred from this evidence that Elliott was not severely injured before the accident and that he was severely injured immediately after the accident. We conclude that a factfinder could have found beyond a reasonable doubt that Elliott's dislocated and fractured hip and injured hand were caused by the accident that formed the basis of appellant's charged offense. *See Jackson*, 443 U.S. at 319.

***

We conclude that sufficient evidence supported the trial court's judgment. We overrule appellant's first issue.

## Speedy Trial

The Sixth Amendment to the U.S. Constitution guarantees the accused in a criminal prosecution the right to a speedy trial. *See* U.S. CONST. amend. VI. This right attaches once a person is either arrested or charged. *Cantu v. State*, 253 S.W.3d 273, 281 (Tex. Crim. App. 2008). Courts determine a speedy trial claim on an ad hoc basis by analyzing and weighing four factors: (1) the length of the delay, (2) the State's reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant because of the length of delay. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Cantu*, 253 S.W.3d at 280. The State has the burden to justify the length of the delay, while the defendant has the burden to prove that he asserted his right and has been prejudiced by the State's delay. *Cantu*, 253 S.W.3d at 280.

### *Standard of Review*

We apply a bifurcated standard of review in a speedy trial analysis: we employ an abuse of discretion standard for the factual components and a de novo standard for the legal components. *State v. Lopez*, 631 S.W.3d 107, 113–14 (Tex. Crim. App. 2021). Thus, we give almost total deference to the trial court's historical findings of fact that are supported by the record. *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014). Initial triggering of the speedy trial issue, as well as the balancing test of the *Barker* factors, are purely legal questions that we review de novo. *Id.*

*Presumptive Prejudice and Length of Delay*

To trigger a speedy trial analysis, the defendant must make an initial showing that "the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Id.* (quoting *Doggett v. United States*, 505 U.S. 647, 651–52 (1992)); *see also Barker*, 407 U.S. at 530–32 (holding that length of delay is "triggering mechanism" for analysis of other factors). There is no set or defined period of time that has been held to be a per se violation of a defendant's right to a speedy trial under the Sixth Amendment. *Barker*, 407 U.S. at 529–30; *Cantu*, 253 S.W.3d at 281. Texas courts have generally considered delay approaching one year to be "unreasonable enough to trigger the *Barker* enquiry." *See Balderas v. State*, 517 S.W.3d 756, 768 (Tex. Crim. App. 2016). But this Court has repeated that we must determine whether a *Barker* analysis is triggered on a case-by-case basis, without imposing rigid time limitations. *Munoz v. State*, No. 05-20-00192-CR, 2021 WL 2253245, at *6 (Tex. App.—Dallas June 3, 2021, pet. ref'd) (mem. op., not designated for publication) (citing *State v. Page,* No. 05-18-01391-CR, 2020 WL 1899453, at *5 (Tex. App.—Dallas April 17, 2020, no pet.) (mem. op., not designated for publication)).

Mosley was arrested and taken into custody on September 4, 2019; his right to a speedy trial attached on that date. *See Cantu*, 253 S.W.3d at 280 (right attaches once a person becomes an "accused" by being arrested or charged). His trial began November 19, 2021, approximately two years and two months later. However, we

have held that—when addressing length of delay—time covered by "agreed resets" is not included in the calculation. *Page,* 2020 WL 1899453, at *6; *see also Robinson v. State,* 707 S.W.2d 47 (Tex. Crim. App. 1986). At the threshold, therefore, we emphasize that the record contains twenty-eight pass slips signed by counsel for appellant between his arrest and the beginning of trial.[3] Accordingly, to determine the relevant time of "delay" for purposes of speedy trial calculation, we break down the twenty-six-month time period by subtracting out agreed-reset periods. "To consider the length of delay, we must first calculate the delay." *Gonzales v. State*, 435 S.W.3d 801, 809 (Tex. Crim. App. 2014).

- September 4, 2019 – December 26, 2019 (3 months, 3 weeks, 1 day delay)

  During this time appellant was arrested, arraigned, and had counsel appointed. He was indicted on December 12, 2019. On that date his case was first set for trial on December 31, 2019.

- December 26, 2019 – March 27, 2020 (0 days delay)

  During this time a series of agreed resets were in place. According to the final reset in this time period, trial was set for June 22, 2020.

- March 27, 2020 – June 4, 2020 (2 months, 1 week, 1 day delay)

---

[3] Appellant is bound by the pass slips that his attorney signed on his behalf. *Orellana v. State*, 706 S.W.2d 660, 661 (Tex. Crim. App. 1986). Even after appellant took over his own representation, the trial court made clear that his appointed lawyer—as co-counsel—remained authorized to act on appellant's behalf.

Appellant filed his pro se Motion for Speedy Trial on March 27, 2020.[4] He did not request a hearing on the motion. At a June 4 hearing, appellant and his attorney signed a waiver of jury trial. The court's docket sheet indicates the judge considered a request for reduction of bail and a request by appellant to represent himself. The parties agreed to reset pretrial to August 20 and trial to September 8—three months later—although appellant has his attorney handwrite on the pass slip, "Mr. Mosley demands immediate trial without delay."

- June 4, 2020 – April 22, 2021 (0 days delay)

A series of agreed resets suspended trial throughout this period of more than ten months. During this time, appellant appeared before the trial court at a series of recorded hearings. At no time did he address a desire for a speedy trial.

  o September 3, 2020. At this pretrial hearing, the trial court granted appellant's counsel's pretrial motions and granted appellant's request to represent himself going forward, with his appointed counsel to remain as co-counsel. Both parties requested a reset, and the judge instructed them to choose their trial date.

  o September 10, 2020. Appellant requested this hearing and successfully argued two motions pro se; neither related to delay in getting to trial.

  o November 17, 2020. At this scheduled pretrial hearing, the court granted appellant's motion to have an expert witness review the State's forensic evidence. Appellant expressly agreed to a reset for that purpose.

  o April 8, 2021. Appellant requested this hearing to address the court and the prosecution. He began:

    To the Court and to the prosecutor, basically, I am not looking for a day in court. I am looking for justice, Your

---

[4] Appellant points to communications before this date that he would like his case to move faster. "A speedy-trial demand should be, at the very least, unambiguous." *Henson v. State*, 407 S.W.3d 764, 769 (Tex. Crim. App. 2013). The March pro se motion was appellant's first unambiguous demand for a speedy trial. Accordingly, our calculation of delay restarts on that date, although the filing actually took place during a period of agreed reset until June 22, 2020. Neither side addressed the speedy trial issue after the motion was filed, and on June 4, 2020, they agreed to reset trial until September.

Honor. And [his co-counsel] has worked very hard, you know, to assist me in preparing my case and stuff. But I feel like if we can all just come together, justice is not just a conviction. Justice is where everybody get made equal.

He requested "probation with an adjudicated or suspended sentence." The State agreed to reduce the charge to a misdemeanor DWI conviction with probation, but appellant rejected the offer because that conviction would still amount to a parole violation, and he believed he would have to remain incarcerated.

   o April 22, 2021. At this pretrial hearing, the State announced "not ready" for the first time; it gave no explanation. Appellant requested and was released on a personal recognizance bond, and trial was reset until August 31, 2021.

- April 22, 2021 – August 31, 2021 (4 months, 1 week, 2 days delay)

   This is a period of delay based solely on the State's announcement that it was not ready for trial.

- August 31, 2021 – November 10, 2021 (0 days delay)

   Another series of agreed resets followed, culminating in an agreed trial setting for November 10. In September, appellant filed a motion to dismiss his co-counsel and a motion to re-test evidence. On October 6, he filed his Motion to Dismiss Prosecution.[5] His motions were heard the morning of November 19, before trial began.

- November 10, 2021 – November 19, 2021 (1 week, 2 days delay)

   This is an unexplained short delay before trial actually begins.

We have classified these time periods broadly in appellant's favor, counting as delay any time not expressly covered by agreed resets. In total, of the approximately

---

[5] The motion to dismiss did not use the term "speedy trial" and cited no authority related to that right. But it clearly sought dismissal based on the State's failure to bring the case to trial at or after the April setting.

twenty-six months that passed between appellant's arrest and his trial, between ten and eleven months could be considered delay; between fifteen and sixteen months were covered by agreed resets of trial dates.

We question whether the delay experienced by appellant was presumptively prejudicial. That period of delay extended less than a year. *See Balderas*, 517 S.W.3d at 768. But more importantly, it was significantly shorter than the time that appellant agreed to put off his trial. The record establishes that for most of the time following his arrest, appellant was not attempting to proceed quickly to trial. *See Munoz*, 2021 WL 2253245, at *6; *see also Henson*, 407 S.W.3d at 769 (defendant who did not file speedy-trial motion, did not request hearing on delays, and agreed to all resets was not "someone seeking to preserve and protect his right to a speedy trial."). The State encourages us to stop our analysis at this point. In the interests of justice and judicial efficiency, we will complete the analysis of the *Barker* factors. However, we assign neutral weight to this first factor of length of delay.

*Reasons for the Delay*

The second *Barker* factor addresses the reasons for the delay in bringing appellant to trial. 407 U.S. at 530. As we have stated, appellant was responsible for extensions of trial settings that accounted for more than half of the time between his arrest and the beginning of his trial. The delay attributed to the State falls largely within three time periods. The first period incorporates the time between appellant's arrest and the agreed extension of the first trial setting, just under four months. This

–13–

time does not weigh heavily against the State, which is entitled to a reasonable time to prepare its case. *See Shaw v. State*, 117 S.W.3d 883, 889–90 (Tex. Crim. App. 2003) ("[T]he three-month interval between appellant's indictment and first trial may not be counted against the State, since the State was entitled to a reasonable period in which to prepare its case.").

The second significant time period, just over two months, fell after appellant initially filed his motion for speedy trial. When he filed his motion, appellant had been in jail for six months and trial was not set, albeit by agreement, for three more months. Neither appellant nor his appointed counsel attempted to set the motion for hearing, but the State also took no action in response to the motion. We conclude this delay weighs only minimally against the State.

It is the third period of delay, following the April 2021 announcement that the State was not ready for trial, which weighs most heavily against it. As we discussed above, this period was specifically addressed by appellant in his October 2021 Motion to Dismiss Prosecution. The State gave no explanation for its April announcement when it was made. When the trial court heard the motion to dismiss the morning of trial, the prosecutor stated:

> Judge, I know one of the resets was due to witness inavailability [sic]. I know two of the resets were due to Mr. Mosley being in quarantine and Mr. Mosley being in the hospital. Those were -- Mr. Mosley was not able to be present for his own trial, which could not proceed under those dates.

–14–

Appellant did not challenge these representations. The State repeats them on appeal, arguing they should weigh "only slightly" against it for purposes of the *Barker* analysis.

We have acknowledged that "the unforeseeable initial impact of the Covid-19 pandemic" inevitably affected the operation of our trial courts during the time period that appellant was awaiting trial, and we have concluded that "[d]elay caused by the onset of a pandemic cannot be attributed as fault to the State." *State v. Conatser*, 645 S.W.3d 925, 930 (Tex. App.—Dallas 2022, no pet.). And while we agree that "even in a pandemic, the Constitution cannot be put away and forgotten," *Huynh v. State*, No. 05-21-00991-CR, 2022 WL 17261155, at *5 (Tex. App.—Dallas Nov. 29, 2022, pet. ref'd), when the cited reason for delay is the accused's own illness or safety, we cannot attribute fault to either party.

A missing witness can be a valid reason that justifies appropriate delay. *Barker*, 407 U.S. at 531. But the State offered no details concerning what witness was unavailable and why that witness was necessary to the prosecution. Nor did it explain what efforts had been made to secure the witness's presence, whether for the April setting or any of the subsequent trial settings. When the State fails to give reasons justifying a reason for delay, we must presume no valid reason for that delay existed. *See Turner v. State,* 545 S.W.2d 133, 137-38 (Tex. Crim. App. 1976).

Overall, we conclude that the State's failure to explain its inability to go to trial in April 2021 was mitigated somewhat by the impact of the pandemic, but it remains a concern. However, there is no argument that the State deliberately delayed appellant's trial for strategic gain. And given appellant's significant acquiescence to delay in this case, we conclude that this second *Barker* factor weighs only slightly against the State.

### *Assertion of the Right*

Appellant did unambiguously assert his right to a speedy trial when he filed his pro se motion in March 2020. After that filing, he intermittently included in his complaints about his appointed attorney that he (i.e., his attorney) had not moved the case forward quickly. During the time that appellant was lead counsel on his case he filed and argued a number of motions, but none related to delays in prosecution until October 2021, when he filed his Motion to Dismiss Prosecution. This factor weighs in appellant's favor.

### *Prejudice Caused by Delay*

Appellant bore the burden of showing that he was prejudiced by the delay in this case. *Cantu*, 253 S.W.3d at 280 ("the defendant has the burden of proving the assertion of the right and showing prejudice") (footnotes omitted).[6] We assess this

---

[6] Appellant quotes *Ex parte McKenzie*, 491 S.W.2d 122 (Tex. Crim. App. 1973), in a misleading fashion, stating "The **State** carries 'the obligation of proving that the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay.'" (Emphasis supplied by appellant). The case actually states:

prejudice considering the interests that the speedy trial right attempts to protect: preventing oppressive pretrial incarceration, minimizing anxiety and concerns of the accused, and limiting the possibility that the defense will be impaired. *State v. Munoz*, 991 S.W.2d 818, 826 (Tex. Crim. App. 1999).

We acknowledge at the outset that appellant was incarcerated for a lengthy period of time before his trial. However, because his parole was revoked on his earlier offense of aggravated sexual assault, he was unable to be released on bail. That earlier offense does not diminish appellant's right to a speedy trial for this offense, but it does realistically operate to diminish incarceration as a potential ground of prejudice caused by delay by the State.

Appellant's brief otherwise fails to identify any significant prejudice he suffered in this case because of that delay. His only specific contention concerning prejudice is: "At minimum, the State's inactivity imposed additional and entirely foreseeable—and unnecessary—worry, anxiety, employment and financial difficulties, and frustration upon Mosley." We agree that one of the interests in a speedy trial is minimizing such concerns. But appellant offered no evidence that he experienced any anxiety or concerns beyond those normally associated with being

---

In *Courtney v. State*, Tex. Crim. App., 472 S.W.2d 151, this Court discussed the four factors to be considered in an alleged violation of an accused's right to a speedy trial. . . . . There we adopted the test that ***if an accused made a prima facie showing of prejudice***, the State 'must carry the obligation of proving that the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay.'"

*McKenzie*, 491 S.W.2d at 123 (Tex. Crim. App. 1973) (our emphasis added). Thus, appellant's statement of the standard ignores his initial obligation to make a prima facie showing of prejudice.

–17–

charged with a crime. *See Cantu*, 253 S.W.3d at 286 ("[E]evidence of generalized anxiety, though relevant, is not sufficient proof of prejudice under the *Barker* test, especially when it is no greater anxiety or concern beyond the level normally associated with a criminal charge or investigation.").

At the hearing on his motion to dismiss, appellant did state: "And in that time [that I've been in jail] I've lost contact with some people that I think—no, I'm sure that would have something to add on my behalf as my defense." But he did not identify any specific witness, what that witness could "add on [his] behalf," or what he had done to try to locate that witness. *See Harris v. State*, 489 S.W.2d 303, 308 (Tex. Crim. App. 1973) (to show prejudice, defendant must show witnesses are unavailable, their testimony might be material and relevant to his case, and he has exercised due diligence in attempt to find them and produce them for trial).[7]

Rather than identifying any specific ground that purportedly impaired his defense, appellant relies on general arguments involving delay, contending, for example, that "excessive delay presumptively compromises the reliability of a trial in ways neither party can prove or identify." The Supreme Court made that very

---

[7] The trial court approved funds for an investigator for appellant. The record does not indicate any attempt by appellant to identify witnesses other than ones with knowledge of his blood alcohol tests.

Appellant never identified Elliott as a witness he wanted but could not bring to trial because of delay. In his brief to this Court, appellant asserts: "It is not necessary for a defendant to show that the testimony of a missing witness (such as Elliott) would have been favorable to the defense, but just that it would have been relevant and material." However, appellant never attempted to show that Elliott would provide testimony that was relevant and material to his defense.

statement in *Doggett*. 505 U.S. at 655. But both that Court and our Texas Court of Criminal Appeals have qualified the principle by explaining that "this 'presumption of prejudice' is 'extenuated . . . by the defendant's acquiescence' in the delay." *Dragoo v. State*, 96 S.W.3d 308, 315 (Tex. Crim. App. 2003) (quoting *Doggett*, 505 U.S. at 658).

We conclude that appellant has failed to establish that he was prejudiced by any delay caused by the State in this proceeding. This factor weighs heavily against him.

*Balancing the* Barker *Factors*

Having assigned weight to the four *Barker* factors, we must balance their relative weights in light of the conduct of both parties. *Cantu*, 253 S.W.3d at 281. It is true that appellant asserted his right to a speedy trial. But when we examine his conduct throughout the time he was awaiting trial, we must conclude that he did not seriously pursue a ruling, or even a hearing, on his assertion. We look especially at the ten- to eleven-month period of time when he was lead counsel for his case. He requested and obtained hearings during this time; he filed and argued motions. But he did not pursue his request for a speedy trial. Indeed, after each period that we have identified as a period of delay charged to the State, appellant agreed again to multiple postponements of his trial.

On one side of our scale, then, are appellant's 2020 motion and the State's failure to give a clear explanation for the four-month delay following its April 2021

–19–

announcement that it was not ready for trial. On the other side, are appellant's agreement to more than twenty-five postponements, valid periods of delay for preparation at the beginning of the case and for appellant's quarantine and hospitalization related to the Covid pandemic, and the lack of any specific identifiable prejudice to appellant on account of the delay. We do not discern conduct on the part of the State that merits granting a motion that appellant did not pursue when he was in control of his case. On balance, the *Barker* factors argue against finding a violation of appellant's right to a speedy trial.

We overrule appellant's second issue.

## Modification of the Judgment

The State asks us to make certain corrections in the judgment, which recites the incorrect statute for appellant's offense, the incorrect plea by appellant, and terms of a non-existent plea agreement. This Court has the power to modify the judgment of the court below to make the record speak the truth when we have the necessary information to do so. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993) (en banc). Therefore, we modify the judgment in this case to recite the following:

- Under "Statute for Offense" — Texas Penal Code § 49.07;

- Under "Plea to Offense" — Not guilty; and

- Under "Terms of Plea Bargain" — N/A.

## CONCLUSION

As modified, we affirm the trial court's judgment.

/Bill Pedersen, III/

220121f.u05          BILL PEDERSEN, III
Do Not Publish      JUSTICE
Tex. R. App. P. 47



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MARION RAY MOSLEY,
Appellant

No. 05-22-00121-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 194th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F-1957997-M.
Opinion delivered by Justice
Pedersen, III. Justices Molberg and
Miskel participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**MODIFIED** to show the following:

- Under "Statute for Offense" — Texas Penal Code § 49.07;
- Under "Plea to Offense" — Not guilty; and
- Under "Terms of Plea Bargain" — N/A.

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 11th day of August, 2023.